

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICKELL B. BALONZE                    :

V.                                    :        NO. 3:02CV02247 (JCH)

TOWN FAIR TIRE CENTERS, INC.          :

                                      :        May 28, 2004

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### The Nature of the Proceedings

Mickell Balonze, a former employee of defendant Town Fair Tire Centers,

Inc. ("Town Fair" or "Town Fair Tire"), brought this action claiming that Town Fair

discriminated against her on the basis of a disability (specifically, a condition of

her right index finger which prevented her from using a computer keyboard) and

her sex, in violation of the Americans With Disabilities Act and Title VII of the Civil

Rights Act of 1964.  The court previously, in a decision dated September 6, 2003,

dismissed Ms. Balonze's claims asserted against individual defendants in their

official capacities.  Town Fair now moves for summary judgment on all remaining

claims, contending: (1) that Ms. Balonze was not disabled within the meaning of

the ADA; (2) that even if she was disabled, Town Fair fulfilled its reasonable

accommodation obligations by modifying her duties after her initial injury and by

offering her a temporary light duty job within her physical restrictions when her

condition flared up, and was permitted to discharge her when she turned down

the light duty position and the company had no permanent positions she was

capable of performing; (3) that Town Fair did not treat Ms. Balonze differently

than it treated similarly situated male employees; and (4) that to the extent Ms. Balonze seeks compensation for her occupational injury itself, or for consequential harm flowing from the injury, her claims must be pursued before the Workers Compensation Commission, rather than in this court.

Statement of Facts[1]

Plaintiff's Employment by Town Fair Tire

In June 1997, defendant Town Fair Tire hired plaintiff Mickell Balonze part-time as the data entry clerk for accounts payable invoices. Her position required a good deal of computer work. She was responsible for entering accounts payable invoices each month, and beginning in October 1998, she was also responsible for entering information from advertising invoices into the computer in preparation for payment of the invoices.

Town Fair terminated Ms. Balonze's employment effective August 27, 2001. Ms. Balonze claims her discharge was discriminatory. Town Fair Tire contends that it had no open positions the essential functions of which Ms. Balonze was able to perform.

Plaintiff's Injury and Town Fair's Response

On or about May 4, 1999, plaintiff experienced pain and swelling in her right index finger while at work. She sought and received medical treatment and

_____

[1] The facts set forth in this Statement of Facts are taken from Defendant's Local Rule 56(a)1 Statement. Supporting evidentiary citations have been omitted here, but are contained in that Statement.

physical therapy for the condition, and within weeks, on May 18, 1999, the physician treating Ms. Balonze's hand (Dr. Arons) described the hand as "greatly improved." As of July 7, 1999, the condition of plaintiff's hand was not preventing or severely restricting her from performing any activities.

Recurring pain in plaintiff's hand necessitated surgery on the hand in October 1999, followed by a few months of rehabilitative therapy. For the one and one-half years following this treatment (until July 2001), plaintiff made no complaints to her doctor concerning her hand. There was no task that she was unable to do at work during this period. In her life outside of work, there was nothing plaintiff's hand prevented her from doing after her recovery from surgery other than braiding hair, and lifting heavy bags of groceries.

In the opinion of plaintiff's treating physician, after the surgery and follow-up therapy, plaintiff was not prevented or severely restricted from doing any activities with her right hand except repetitive motion of the right index finger, and there was no activity of central importance to most people's daily lives that plaintiff was prevented or severely restricted from doing.

As a result of the condition that developed in plaintiff's right hand as of May 1999, her doctor imposed restrictions on her use of the hand. At first, she was told to rest her hand and not to work from May 6 through May 18, 1999. She returned to work in a one-handed capacity from May 19, 1999 through July 6, 1999. As of July 7, 1999, she was permitted to return to full-duty, two-handed work, in which she remained until July 28, 1999. She returned to one-handed duty from July 29 to August 9, 1999. After August 9, 1999, she was again

permitted to return to full duty.  Town Fair Tire accommodated all of these restrictions.

After Ms. Balonze's injury, Town Fair Tire made significant changes to Ms. Balonze's job duties in order to reduce the amount of data entry and other computer key punching required of her.  No later than early September 1999, although plaintiff had been released to "full duty," Town Fair relieved her of the responsibility for processing the accounts payable invoices.  Town Fair substituted four other duties.  Two of these -- distribution of mail, and filing -- involved <u>no</u> keypunching.  The other two involved only small amounts of keypunching: telephone coverage required no more than a few keystrokes during two break periods and one lunch period each week, and verification of cash deposits required punching a few computer keys to print a report once a week. No portion of plaintiff's job duties following these adjustments by the defendant in September 1999 caused plaintiff any problem with her hand.

In October 2000, plaintiff's physician certified that she had reached maximum medical improvement and released her from further treatment, stating that she could continue "in her current regular-duty work capacity."  He assigned her a permanent partial disability rating of just 17% of the right master index finger, or 3% of the right master hand.

In February 2001, Town Fair assigned plaintiff new responsibilities— primarily verifying wheel receipts by checking lists of wheels received in stores against vendors' invoices—that Kathy Tutino, Town Fair's Controller, wanted to assign to an experienced employee when the individual who had been fulfilling

those responsibilities left the company. Plaintiff received a twenty-five cent per hour raise at the same time, notwithstanding the 3.5% raise she had just received in January 2001. At the time Ms. Tutino assigned plaintiff her new responsibilities, another employee was hired to assume most of the data entry responsibilities of the person who had left. Ms. Tutino also told plaintiff to let her know if any of plaintiff's new responsibilities posed a problem for plaintiff's hand.

Notwithstanding this instruction, plaintiff said nothing to Ms. Tutino at any time following this meeting about her job causing a problem with her hand or her finger. She made no new contact with her doctor or any other health care provider concerning her hand at any time prior to June 2001. While plaintiff attributes increased pain in her hand after February 2001 to new keying responsibilities assigned at that time by Ms. Tutino, she can offer no specific information as to how much additional keypunching time or how many additional keystrokes were added to her duties. Furthermore, plaintiff admits that she may have increased her computer use at work to do non-work related activities, such as letter writing, during that period. At no time did plaintiff request relief from any of the duties assigned to her in February 2001.

Town Fair Tire provided workers compensation insurance coverage which paid for all of the treatment plaintiff received for her hand between 1999 and 2001. She also received workers compensation benefits for the wages she lost due to time away from work in 1999 and 2001. Town Fair Tire did not contest plaintiff's claims for these benefits.

Aggravation of Ms. Balonze's Injury, and Town Fair's Light Duty Offer

Plaintiff experienced a period of increased pain and reduced capacity in her hand beginning in June 2001, but even then she was not prevented or severely restricted from engaging in any activities that are of central importance to most people's daily lives. Plaintiff did not visit her doctor for treatment until July 18, 2001. She has not received any treatment for her hand since July 2001, and is not receiving treatment for it now. Since July 2001, plaintiff has never been prevented or severely restricted from engaging in activities that are of central importance to most people's daily lives. Furthermore, her treating physician does not anticipate that she will be so restricted in the future, at least so long as she does not make repetitive use of her right index finger.

Dr. Arons directed in a note dated July 23, 2001 that plaintiff refrain from all keyboard duty and all keypunching with her right hand. Ms. Balonze took sick leave and vacation through July 30. When she returned to work on July 31, Town Fair offered her a temporary light duty position that would comply with those restrictions. The job duties of the position included opening and distributing mail, and answering the telephones during the receptionists' break periods. The hours required in the new position were 10:00 a.m. until 2:00 p.m. four days per week, but Town Fair offered Ms. Balonze the opportunity to work those hours five days per week if she wished. These hours were based on the fact that telephone coverage during the receptionist's break times, including the lunch hour, was the most significant duty included in the new position.

When plaintiff returned to work on July 31, she informed Ms. Tutino that she would not be able to work during the receptionist's lunch break on August 1 or August 3, because she had already scheduled physical therapy appointments during those hours. The therapy appointments typically required her to spend between one and one-and-one-half hours away from the office. Ms. Tutino asked plaintiff to change the appointment times, but plaintiff refused to do so, notwithstanding her awareness that the therapy center was open before and after her work hours.

When plaintiff came to work on the following day, Ms. Tutino gave her a letter stating "[Y]ou have advised us that you have scheduled physical therapy during these [10:00 a.m. to 2:00 p.m.] working hours and that the schedule cannot be changed. For business reasons, this is not acceptable to us and we cannot further modify the hours for the light duty position that meets your scheduling needs. We have notified our worker's compensation insurance carrier that we have no light duty position and are unable to offer you any light duty at this time. Please contact me when your doctor authorizes you to return to your normal duty." Ms. Tutino and Michael Barbaro, Town Fair Tire's Senior Vice President, met with plaintiff and explained that because her therapy appointments would prevent her from fulfilling the telephone coverage duties of the light duty position she had been offered, and because there was no other light duty work available that involved no keyboarding, the light duty offer was withdrawn. Ms. Balonze would receive Workers Compensation benefits until her doctor decided what permanent restrictions would govern her work. Plaintiff

admits that she did not pay attention to what Ms. Tutino and Mr. Barbaro said during this meeting. After the meeting, plaintiff left Town Fair Tire.

While plaintiff now claims that there were other job duties that she could have performed at Town Fair Tire instead of, or in addition to those included by defendant in the proposed light duty position, she did not say anything about any such other duties to Ms. Tutino at the time.


Plaintiff's Discharge

In a "Progress Note" dated August 20, 2001, a copy of which was sent to Ms. Thomas at Town Fair Tire, Dr. Arons released Ms. Balonze to perform "two-handed modified duty, non-repetitive, with little or no keying," thus making permanent the restrictions he had imposed as of July 23. Ms. Balonze also delivered to Ms. Thomas a standard form of return-to-work note, signed by Dr. Arons, which stated that Ms. Balonze "Should be excused from Regular Full Duty Work at Town Fair . . . permanently" and that she was "released to Modified Duty — 2 hands — Non repetitive — No Keying."

On August 27, 2001, Town Fair Tire notified plaintiff by letter that because keyboarding was an essential function of the position she had held prior to the reinjury of her finger, and because Town Fair Tire had no other positions available that did not require use of a keyboard, Plaintiff's employment was terminated. Plaintiff did not, upon her receipt of this letter or later, notify anyone at Town Fair that she could, in fact, do work that required keyboarding.

Plaintiff's Hostile Environment Claim

Plaintiff claims that the work environment at Town Fair Tire was continuously hostile from May 1999 through July 2001. Nevertheless, during that period of over two years, she never told anyone at Town Fair Tire, other than her husband, that she considered the environment hostile. Nor did she, during that period, look for other employment.

Plaintiff claims, in particular, that she was subjected to verbal harassment by her supervisor on an "almost daily" basis during the period May 1999 through July 2001. She claims that Ms. DaCorte called her "names," like "gimpy" and "useless." Other than asking Ms. DaCorte "a few times" to stop using such names, however, plaintiff did not complain or make any other attempt to put a stop to the alleged conduct. Notwithstanding the nonharassment policy that was in place at Town Fair Tire at the time of the harassment alleged, Ms. Balonze did not report any harassment by Ms. DaCorte at any time.

Plaintiff also claims that she suffered "unwarranted humiliation" by Ms. Tutino. The only action or conduct by Ms. Tutino that she claims to have constituted such humiliation, however, was Ms. Tutino's assignment of new work duties in February 2001.

Plaintiff's Claim for Retaliatory Discharge Under Conn. Gen. Stat. § 31-290a

Ms. Balonze's claim for Workers Compensation benefits was first filed in 1999. Town Fair's Workers Compensation insurance has paid for all treatment for Ms. Balonze's finger condition.

After she was discharged by Town Fair Tire, plaintiff filed a claim with the Workers' Compensation Commission alleging that she had been discharged in violation of C.G.S. § 31-290a.  That section provides: "No employer who is subject to the provisions of [the Workers Compensation statute] shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of [the Workers Compensation statute]."

On August 7, 2001, at a time when she was represented by counsel, plaintiff signed a stipulation constituting a full and final settlement of her C.G.S. §31-290a claims.

Notwithstanding her receipt of Workers Compensation benefits and her release of her claim under C.G.S. §31-290a, in this action plaintiff seeks compensation  for lost earning capacity, and for alleged physical and mental suffering flowing from her May 4, 1999 occupational injury at Town Fair Tire.


Town Fair's Light Duty Policy

Town Fair Tire has a policy of offering light duty work if available to employees who, due to medical restrictions, cannot perform all of the essential functions of their positions.  When the light duty position carries less responsibility than the employee's regular job, or has an established salary or wage that is lower than the employee's regular position, the employee is paid at

the lower rate. Workers Compensation makes up a portion of the difference in these circumstances.

Since 2001, several male Town Fair Tire employees who were injured and were authorized by their doctors to return to work with medical restrictions were offered (and accepted) light duty positions with less responsibility and a lower rate of pay than they had been earning in their regular jobs. They returned to their previous positions at full pay when their restrictions were lifted. One male employee who was offered a light duty position consistent with his physical limitations failed to appear for work, and his employment was terminated. Another male employee accepted a temporary light duty position at a reduced rate of pay; after nearly six months in the position he inquired about a "permanent light duty" position with more hours and higher pay. Town Fair Tire had no permanent position open for which he was qualified and that was within his restrictions, and his employment was therefore terminated.

Town Fair did not treat Ms. Balonze differently than similarly situated male employees with respect to its offer to her of a temporary light duty position, the reduced hourly rate associated with that position, or its termination of her employment when she was placed under permanent restrictions by her physician, and the company had no available positions consistent with those restrictions.

<u>Argument</u>

I.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that this standard has been satisfied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505 (1986); *Carlton v. Mystic Transp., Inc.,* 219 F.3d 129, 133 (2d Cir. 2000). Once the moving party has met its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The opponent of summary judgment may not rely on speculation or conjecture, may not rest on the allegations or denials contained in her pleadings, and may not create a genuine issue of fact simply by presenting contradictory or unsupported statements. *See Munck v. New Haven Savings Bank,* 251 F.Supp.2d 1078, 1081 (D.Conn. 2003) (Hall, J.); *Beason v. United Technologies Corp.,* 213 F.Supp.2d 103, 107 (D.Conn. 2002) (Droney, J.). The court should, however, resolve any ambiguities and draw all inferences in favor of the nonmoving party. *Munck,* 251 F.Supp.2d at 1081; *Beason,* 213 F.Supp.2d at 107.

II.    MS. BALONZE WAS NOT DISABLED WITHIN THE MEANING OF THE ADA.

The plaintiff's complaint may fairly be read to allege that Town Fair Tire discriminated against her on the basis of a disability, by harassing her, failing to

provide a reasonable accommodation for her condition, and ultimately discharging her. In order to make out a *prima facie* case of discrimination under the ADA, Ms. Balonze must show: (1) that Town Fair Tire is subject to the statute; (2) that she was disabled within the meaning of the ADA; (3) that she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of her disability. *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001); *Munck,* 251 F.Supp.2d at 1082; *Beason,* 213 F.Supp.2d at 108. Ms. Balonze cannot establish the second or third elements of the *prima facie* case.

Plaintiff does not specifically identify her alleged disability in her Complaint, but clearly it relates to the injury she suffered to her right index finger, which resulted in certain restrictions on her work activities and the assignment to her of a "disability rating" in connection with her Workers Compensation claim.

The Americans With Disabilities Act prohibits discrimination against any "qualified individual with a disability." 42 U.S.C. §12112(a). Such an individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8).

"Disability" is defined in the statute as follows:

The term "disability" means, with respect to an individual –

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual:

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. §12102 (2).

Because the Plaintiff here has "a physiological condition that affects her musculoskeletal system," it is not disputed that she has a physical "impairment." *See Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 194-95, 122 S.Ct. 681, 690 (2002) (referring to regulations issued by Department of Health, Education and Welfare under the Rehabilitation Act for definition of physical impairment). But as the Court noted in *Toyota,* "[m]erely having an impairment does not make one disabled for purposes of the ADA." 534 U.S. at 195, 122 S.Ct. at 690. Plaintiff must show that her impairment *substantially* limits a *major* life activity. *Id.* Further, to the extent plaintiff claims that she is substantially limited in the major life activity of "performing manual tasks," she must demonstrate that her impairment is one "that prevents or severely restricts [her] from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota,* 534 U.S. at 198, 122 S.Ct. at 691.

Ms. Balonze's impairment does not meet the ADA standard. As she admitted in her deposition, and as her treating physician confirmed, her finger condition does not limit any of her major life activities; and to the extent she may claim that her inability to use a computer keyboard for extended periods is a limitation on the major life activity of performing manual tasks, she cannot establish that any such limitation is substantial. Her physician confirmed that at

no time has her impairment restricted her from activities central to most people's daily lives.

This Court has recently dealt with a claim somewhat similar to Ms. Balonze's, in *Munck v. New Haven Savings Bank*, 251 F.Supp.2d 1078 (D. Conn. 2003). As a result of injuries suffered in an automobile accident, the plaintiff there "had difficulty performing repetitive motions on the right side of her body, and could not lift more than 20 or 30 pounds without discomfort. . . . [H]owever, . . . she was able to attend to her own personal hygiene, including bathing, was able to perform household chores, was able to babysit for young children, and could shop and cook for her family." *Id.* at 1083. The court observed that merely being impaired does not make one disabled under the ADA, and that the ability to tend to personal hygiene and carry out personal or household chores is relevant to a determination of disability. *Id.* Then the court discussed a Second Circuit decision, *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635 (2d Cir. 1998), which held that several far more debilitating impairments -- including chronic lower back syndrome, chronic degenerative disk disease, and the aftereffects of a cerebral hemorrhage – did not constitute "disabilities" because they did not substantially limit major life activities of the plaintiffs. The court also reviewed cases from other Circuits, including, notably, *Thornton v. McClatchy Newspapers, Inc.*, 292 F.3d 1045 (9th Cir. 2002), in which a plaintiff who could not engage in "continuous keyboarding or handwriting" was held not be disabled because she was not "substantially limited" in performing manual tasks. The

court concluded that the plaintiff in *Munck* was not disabled. 251 F.Supp.2d at 1084.

Here, as in *Munck*, the plaintiff may be impaired. She cannot perform the job-related task of using a computer keyboard with her right hand. But this impairment does not substantially limit her ability to carry on any major life activity, and she therefore is not disabled as that term is defined by the ADA. *See also Lajeunesse v. Great Atlantic & Pacific Tea Co.,* 160 F.Supp.2d 324, 330-33 (D.Conn.2001) (Thompson, J.) (plaintiff with rotator cuff injury to right shoulder that restricted his ability to lift was not disabled because his condition did not substantially limit his ability to sit, stand, lift, reach or sleep, nor significantly restrict his employment generally); *Cutler v. Hamden Board of Education,* 150 F.Supp.2d 356 (D.Conn. 2001) (employee with carpal tunnel syndrome not disabled because condition did not substantially limit major life activity).[2] The fact that plaintiff has received a "disability rating" or "permanency rating" from her physician for Workers Compensation purposes does not establish that she has a disability under the ADA, absent evidence that the impairment substantially limits major life activities. *Lajeunesse,* 160 F.Supp.2d at 332.

Nor can plaintiff save her claim by arguing that she was "regarded as" disabled by Town Fair Tire, *see* 42 U.S.C. §12102(2)(C). To prevail on this type of ADA claim, plaintiff would have to establish that Town Fair Tire mistakenly

---

[2]    The court in *Cutler* cites numerous cases holding that carpal tunnel syndrome – a condition that restricts a person from performing jobs that require a substantial amount of sustained repetitive motion with the wrist – is not a disability under the ADA. *Cutler,* 150 F.Supp.2d at 357-59.

believed that her impairment substantially limited one or more of her major life activities. *Beason,* 213 F.Supp.2d at 108 (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139 (1999)). There is no evidence whatsoever to support such a contention with respect to any of Ms. Balonze's major life activities other than, possibly, the activity of "working".

To show that Town Fair Tire mistakenly perceived her as substantially limited in the major life activity of working, plaintiff would have to demonstrate that the company viewed her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(I). *See Sutton,* 527 U.S. at 492, 119 S.Ct. 2139 (plaintiff must show that she was regarded as "precluded from more than one type of job, a specialized job, or a particular job of choice.") Plaintiff cannot show that Town Fair Tire viewed her as so broadly restricted.

When it discharged the plaintiff, Town Fair Tire believed, based on Dr. Arons' report, that Ms. Balonze was permanently restricted from working in jobs involving computer keyboarding. Although there are undoubtedly many jobs in the economy that require use of a keyboard, it is also undeniable that many jobs, in many fields and industries, do not require keyboard use. Therefore plaintiff cannot establish that Town Fair Tire regarded her as unable to perform a broad range of jobs. In numerous cases, courts have found that employees who were either perceived as more severely impaired than Ms. Balonze, or were actually more severely impaired than Ms. Balonze, were neither substantially limited nor perceived as substantially limited in the major life activity of working. *See*

17

*Giordano v. New York,* 274 F.3d 740, 749-50 (2d cir. 2001) (police officer perceived as unable to perform "police or other investigative or security jobs that involve a substantial risk of physical confrontation" was not regarded as substantially limited in a broad range of jobs); *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635 (2d Cir. 1998) (police officers who could not perform physically confrontational work were not substantially limited from a broad range of jobs, or regarded as such); *Beason,* 213 F.Supp.2d at 109-115 (employee perceived by his employer as unable to perform other than sedentary work, lift more than 25 pounds, or work with heavy or vibrating machinery was not regarded as disabled); *Shaw v. Greenwich Anesthesiology Associates, P.C.,* 137 F.Supp.2d 48, (D.Conn. 2001) (Dorsey, J.) (plaintiff anesthesiologist with severe arthritis who was offered only part-time position was not regarded as disabled where there was no evidence that her employer believed she was substantially limited in working in a broad class of jobs).

Since Ms. Balonze was neither substantially limited in any major life activity, nor perceived as so limited, she cannot establish the second element of her *prima facie* case, *i.e.,* that she was disabled as the term is defined by the ADA. Her claim of disability discrimination must therefore fail.[3]

---

[3]    The fact that Ms. Balonze is not disabled dooms her disability discrimination claim not only on the ground that she was discharged, but on the basis of harassment or "hostile environment" as well. Assuming that such claims can be brought under the ADA – an issue that apparently has not been settled in this Circuit – plaintiff would still be required to show that she is in the protected category in order to proceed with the claim. *Steele v. Thiokol Corp.,* 241 F.3d 1248 (10th Cir. 2001).

III.    EVEN ASSUMING PURELY FOR THE SAKE OF THE ARGUMENT
THAT PLAINTIFF WAS DISABLED, SHE CANNOT ESTABLISH THAT
SHE WAS "QUALIFIED" OR THAT TOWN FAIR TIRE FAILED TO
REASONABLY ACCOMMODATE HER DISABILITY.

Let us assume, purely for the sake of the argument, that Ms. Balonze

could establish that she has a disability under the ADA.  Her disability

discrimination claim must still fail, because she cannot demonstrate that she was

a "qualified individual with a disability" for the position she held, nor can she show

that Town Fair Tire did not offer a reasonable accommodation to enable her to

perform the essential functions of that position.

To be a "qualified individual with a disability," a person must be able to

perform the essential functions of the position she holds or desires, with or

without a reasonable accommodation.  42 U.S.C. § 12111(8).  Here, it is

undisputed that using a keyboard was an essential function of the position Ms.

Balonze held prior to the reaggravation of her finger condition in June or July of

2001.  It is undisputed that Dr. Arons, in August 2001, permanently restricted Ms.

Balonze from working in a job that required any use of a keyboard.  Therefore, it

cannot be disputed that Ms. Balonze was unable, absent a reasonable

accommodation, to perform an essential function of the position.

Ms. Balonze may claim that as a reasonable accommodation, Town Fair

should have reassigned the keyboarding functions of her position to someone

else, or should have created a new position for her that did not require use of a

keyboard.  The law is clear, however, that the obligation of reasonable

accommodation does not require an employer to restructure a position and

eliminate an essential function, *Borkowski v. Valley Central School District, 63*

*F.3d 131, 140 (2d Cir. 1995);* reassign an employee if no position for which the employee is qualified is vacant, *Mitchell v. Washingtonville Central School District,* 190 F.3d 1, 9 (2d Cir. 1999); or create a new position to accommodate a disabled employee, *Norville v. Staten Island University Hospital,* 196 F.3d 89, 99 (2d Cir. 1999).

When Ms. Balonze first injured her finger in 1999, Town Fair Tire met or exceeded its reasonable accommodation obligations by restructuring her position to significantly reduce the amount of keypunching required of her. When her condition flared up again in July of 2001, Town Fair, believing that the complete restriction on keyboarding was temporary, offered her a temporary light duty position that was within her restriction. Because she refused to make herself available during the receptionist's lunch hour, and covering for the receptionist during lunch was the most essential function of the light duty job, the company withdrew the offer. Ms. Balonze was not disadvantaged, as she was able to collect Workers Compensation benefits if Town Fair had no light duty position available. Then, when Ms. Balonze's physician advised Town Fair that Ms. Balonze's complete inability to use a keyboard was a permanent restriction on her work activity, the company terminated her employment because use of a keyboard was an essential function of her position, and there was no vacant alternative position within her restrictions and for which she was qualified. On these facts, Town Fair Tire must prevail on any claim that it failed to offer Ms. Balonze a reasonable accommodation.

IV.    TOWN FAIR TIRE DID NOT TREAT PLAINTIFF DIFFERENTLY THAN IT
TREATED SIMILARLY SITUATED MALE EMPLOYEES.

In her Complaint, plaintiff alleges that Town Fair Tire discriminated against

her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964.

In support of this claim, she alleges only that "On or about 5/4/99 through

7/23/01, Town Fair Tire Centers, Inc. had male employees that were working

under medical restrictions yet those male employees did not have to suffer the

humiliation and anxiety of work reduction, pay reduction, or termination."

(Complaint, Attachment to Complaint, Question 6, No. 11.)

This is a claim of disparate treatment. Ms. Balonze alleges that Town Fair

Tire treated similarly situated male employees – *i.e.,* male employees who were

medically restricted from performing all of their usual job duties – were treated

better than she was treated. Her reference to "work reduction, pay reduction, or

termination" makes it clear that her claim arises from the temporary light duty job

offered to her as of July 31, 2001 (after her doctor had notified Town Fair that

she must avoid all keyboard work), which carried reduced hours and a reduced

rate of pay, and her subsequent discharge from employment.

There is not a shred of evidence to support this claim. As Ms. Tutino

explains in her affidavit, Town Fair Tire treats male employees with medical

restrictions exactly as it treated Ms. Balonze. If a male employee can perform

the essential functions of his position, as Ms. Balonze was able to do from the

time of her surgery until July 2001, he remains in his position and non-essential

functions of the position may be reallocated. If he cannot perform all of the

essential functions of his position, the company will offer him light duty work, if it

is available. If the light duty position carries a lower pay rate, he receives the lower rate, and Workers Compensation makes up a part of the difference. When a male employee is permanently unable to perform an essential function of his position, as Dr. Arons said Ms. Balonze was as of August 20, 2001, he will be reassigned to a vacant position that is within his capabilities if such a position is available. If it is not, he will be discharged.

Ms. Balonze has had ample opportunity to conduct discovery in this case. Town Fair Tire has produced over 2000 pages of documents she has requested, including records pertaining to male employees with medical restrictions. To avoid summary judgment, she must now set forth "*specific facts* showing that there is a genuine issue for trial," and present evidence that would allow a jury to find in her favor. *Munck v. New Haven Savings Bank,* 251 F.Supp. 2d at 1081 (citations omitted, emphasis added). She may not rely on speculation or conjecture. *Id.* In the absence of specific evidence that Town Fair has treated male employees better than it treated plaintiff, Ms. Tutino's affidavit sufficiently establishes the absence of any material issue of fact for trial with respect to the claim of sex discrimination, and the defendant is entitled to summary judgment on that claim.

V.    MS. BALONZE CANNOT, IN THIS PROCEEDING, RECOVER
      DAMAGES FOR THE INJURY TO HER FINGER, FOR ANY
      SUBSEQUENT AGGRAVATION OF THAT INJURY, OR FOR
      VIOLATION OF CONNECTICUT GENERAL STATUTES §31-290a.

In her Complaint, Ms. Balonze alleges that she was harassed and

otherwise mistreated, and eventually was discharged, after suffering "an

occupational injury to [her] right index finger." In her Damage Analysis (Balonze

Dep. Exhibit 6) she describes alleged harassment by supervisors relating to her

attendance at physical therapy for her injury, and claims that she was not

permitted to return to work at Town Fair Tire even though her doctor had

released her "under the same restrictions that she had worked under from

October 2000." She seeks damages that flow from the injury itself, including the

impairment of the natural function in her hand, physical pain, future economic

loss, impairment of earning capacity, and the anxiety she suffers over all of the

foregoing. But these are not damages that plaintiff can recover in an action for

employment discrimination, whether on the basis of disability or gender.

To the extent plaintiff seeks damages for the injury to her hand, her claim

is barred by the Connecticut Workers Compensation Act. Conn. Gen. Stat. §31-

284(a) provides in pertinent part that an employer that provides workers

compensation insurance for its employees

> shall not be liable for any action for damages on account of
> personal injury sustained by an employee arising out of and in the
> course of his employment . . . , but an employer shall secure
> compensation for his employees as provided under this chapter,
> . . . . All rights and claims between an employer who complies with
> the requirements of subsection (b) of this section and employees,
> or any representatives or dependents of such employees, arising
> out of personal injury or death sustained in the course of

employment are abolished other than rights and claims given by
this chapter....

The statute establishes the Workers Compensation system as the
exclusive remedy for workplace injuries to employees, and bars Ms. Balonze's
claims to the extent she seeks damages arising from the injury to her hand,
including the cost of treatment, any physical or mental suffering, and any
impairment of earning capacity arising from the injury. *Mingachos, Administrator
v. CBS, Inc., et al.,* 196 Conn. 91, 491 A.2d 368 (Conn. 1985).

Moreover, to the extent Ms. Balonze claims that Town Fair discharged
her, discriminated against her, or retaliated against her because she filed a claim
for workers compensation benefits, *see* Conn. Gen. Stat. §31-290a, she waived
and released such claims by entering into a Stipulation with Town Fair on August
7, 2002, which was approved by the Workers Compensation Commissioner for
the Third District on August 14, 2002.  Both parties were represented by counsel
in the Workers Compensation proceedings that led to the Stipulation, and insofar
as Town Fair is aware, there is no dispute as to its validity.

Ms. Balonze's Damage Analysis reveals confusion on her part as to the
types of wrongs for which the ADA and Title VII provide remedies.  Her most
serious complaints seem to be that the Workers Compensation system has not
adequately compensated her for her injury and its consequences.  Clearly, the
defendant is entitled to judgment as a matter of law to the extent that Ms.
Balonze's claims either are barred by the exclusive remedy provisions of the
Workers Compensation Act, or have already been settled and released.

Conclusion

The plaintiff injured her finger at work, and Town Fair accommodated her restrictions.  She re-injured her finger, and her doctor reported that she was permanently restricted from any use of a computer keyboard.  This restriction disqualified her from all available positions at Town Fair Tire, and she was therefore discharged.  She was not, however, disabled as the term is defined in the Americans With Disabilities Act, since her condition did not substantially limit her ability to engage in any major life activities.  Town Fair Tire did not breach its obligation of reasonable accommodation, and plaintiff was not treated differently than similarly situated male employees.  She has already received Workers Compensation benefits for her injury and its consequences.   There are no disputed issues of material fact, and Town Fair Tire is entitled to judgment as a matter of law.

Respectfully submitted,

Jonathan B. Orleans (ct05440)
Sarah W. Poston (ct19702)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT  06604
Tel. (203) 333-9441
Fax: (203) 333-1489
e-mail: jorleans@znclaw.com

Attorneys for Defendant Town Fair Tire
Centers, Inc.

25

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via first class

U.S. Mail, postage prepaid, on this date, to:

        Mickell Balonze
        601 Longfellow Drive
        Branford, CT 06405

Dated at Bridgeport, Connecticut on this 28th day of May, 2004.

Jonathan B. Orleans