# ORIGINAL

United States District Court
District of Connecticut
FILED AT    BRIDGEPORT

May 28, 2004
Kevin F. Rowe, Clerk
By Susan D'Culsea
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICKELL B. BALONZE          :

V.                          :          NO. 3:02CV02247 (JCH)

TOWN FAIR TIRE CENTERS, INC.,   :

                            :          MAY 28, 2004

## LOCAL RULE 56(a)1 STATEMENT

Pursuant to D. Conn. L. Civ. Rule 56(a)1, and in support of its Motion for Summary Judgment, defendant Town Fair Tire Centers, Inc. ("Town Fair" or "Town Fair Tire") states that for purposes of the motion there is no genuine issue to be tried as to the material facts set forth below.  Referenced deposition transcripts, exhibits, and the Affidavit of Kathryn Tutino have been submitted as Exhibits to the Declaration of Jonathan B. Orleans.

Plaintiff's Employment at Town Fair Tire

1.      In June 1997, defendant Town Fair Tire hired plaintiff Mickell Balonze part-time as the data entry clerk for accounts payable invoices.  Deposition of Mickell Balonze ("Balonze Dep.") at 12:25-13:2; 13:14-16; 13:21-23.

2.      Town Fair terminated Ms. Balonze's employment effective August 27, 2001.  Affidavit of Kathryn L. Tutino ("Tutino Affidavit") ¶15; Balonze Dep. 203:20-204:2; Balonze Dep. Exhibits 20, 21.

Plaintiff's Finger Condition

3.      On or about May 4, 1999, plaintiff experienced pain and swelling in her right index finger while at work. Balonze Dep. at 25:21-26:15. She sought and received medical treatment and physical therapy for the condition, and within weeks, on May 18, 1999, the physician treating Ms. Balonze's hand (Dr. Arons) described the hand as "greatly improved." Deposition of Jeffrey Arons, M.D. ("Arons Dep.") at 14:25-15:21; Arons Dep. Exhibit 4 (Bates #D02082).

4.      As of July 7, 1999, the condition of plaintiff's hand was did not prevent or severely restricting her from performing any activities. Arons Dep. at 21:2-6.

5.      Recurring pain in plaintiff's hand necessitated surgery in October 1999, followed by a few months of rehabilitative therapy. Balonze Dep. at 38:18-22; Arons Dep. at 23:19-24:15; Arons Dep. Exhibit 4 (Bates ##D02087-2096).

6.      For the one and one-half years following this treatment (until July 2001), plaintiff made no complaints to her doctor concerning her hand. Balonze Dep. at 39:5-40:3. There was no task that she was unable to do at work during this period. Balonze Dep. at 40:14-41:20. In her life outside of work, after her recovery from surgery there was nothing plaintiff's hand prevented her from doing other than braiding hair, and lifting heavy bags of groceries. Balonze Dep. at 41:23 – 46:23.

7.      In the opinion of plaintiff's treating physician, after the surgery and follow-up therapy, plaintiff was not prevented or severely restricted from doing any activities with her right hand except repetitive motion of the right index finger, and there was no activity of central importance to most people's daily lives that plaintiff was prevented or

severely restricted from doing.  Arons Dep. at 24:16-25:10; 26:19-27:13; Arons Dep.
Exhibit 4 (Bates #D02103-04).

8.    Plaintiff experienced a period of increased pain and reduced capacity in
her hand beginning in June 2001, but even then she was not prevented or severely
restricted from engaging in any activities that are of central importance to most people's
daily lives.  Arons Dep. at 27:14 - 28:22.  Plaintiff did not visit her doctor for further
treatment until July 18, 2001.  Arons Dep. at 27:14-17.  She has not received any
treatment for it since July 2001, and is not receiving treatment for it now.  Balonze Dep.
at 149:11-150:6; 48:3-5; 155:14-16.

9.    Since July 2001, plaintiff has never been prevented or severely restricted
from engaging in activities that are of central importance to most people's daily lives.
Arons Dep. at 28:23-29:15.  Furthermore, her treating physician does not anticipate that
she will be so restricted in the future, at least so long as she does not make repetitive
use of her right index finger.  Arons Dep. at 31:15-25.


Town Fair Tire's Responses to Plaintiff's Hand Condition

10.    Town Fair provided workers compensation insurance coverage which paid
for all of the treatment plaintiff received for her hand between 1999 and 2001.  She also
received workers compensation benefits for the wages she lost due to time away from
work in 1999 and 2001.  Balonze Dep. at 47:3-17; 142:3-143:5.  Town Fair Tire did not
contest plaintiff's claims for these benefits.  Tutino Affidavit ¶6.

11.     From the beginning of her employment at Town Fair Tire, plaintiff spent a lot of time working on the computer. Balonze Dep. 13:21-14:3. She was responsible for entering accounts payable invoices each month prior to her May 1999 injury, and beginning in October 1998, she was also responsible for entering information from advertising invoices into the computer in preparation for payment of the invoices. Balonze Dep. 24:13-25:6.

12.     As a result of the condition that developed in plaintiff's right hand as of May 1999, her doctor imposed restrictions on her use of the hand. At first, she was told to rest her hand and not to work from May 6 through May 18, 1999. Arons Dep. at 32:3-13. She returned to work in a one-handed capacity from May 19, 1999 through July 6, 1999. Arons Dep.32:19-22; Arons Dep. Exhibit 4 (Bates #D02082 - D02085). As of July 7, 1999, she was permitted to return to full-duty, two-handed work, in which she remained until July 28, 1999. Arons Dep. at 33:8-11. She returned to one-handed duty from July 29 to August 9, 1999. Arons Dep. at 34:7-9. After August 9, 1999, she was again permitted to return to full duty. Arons Dep. at 34:13-16. Town Fair Tire accommodated all of these restrictions. Tutino Affidavit ¶7.

13.     After Ms. Balonze's injury, Town Fair Tire made significant changes to Ms. Balonze's job duties in order to reduce the amount of data entry and other computer key punching required of her. Tutino Affidavit ¶7. No later than early September 1999, although plaintiff had been released to "full duty," Town Fair relieved her of the responsibility for processing the accounts payable invoices. *Id.*; Balonze Dep. at 33:25-35:13. Town Fair substituted four other duties. Two of these -- distribution of mail, and

4

filing -- that involved <u>no</u> keypunching. The other two involved only small amounts of keypunching: telephone coverage required no more than a few keystrokes during two break periods and one lunch period each week, and verification of cash deposits required punching a few computer keys to print a report once a week. Balonze Dep. at 48:6-51:19. No portion of plaintiff's job duties following these adjustments by the defendant in September 1999 caused plaintiff any problem with her hand. Balonze Dep. at 56:9-13.

14.    In October 2000, plaintiff's physician certified that she had reached maximum medical improvement and released her from further treatment, stating that she could continue "in her current regular-duty work capacity." He assigned her a permanent partial disability rating of just 17% of the right master index finger, or 3% of the right master hand. Arons Dep. at 26:24-27:13; Arons Dep. Exhibit 4 (Bates ## D02103-2104).

15.    In February 2001, Town Fair assigned plaintiff new responsibilities -- primarily verifying wheel receipts by checking lists of wheels received in Town Fair Tires' stores against vendors' invoices -- that Kathy Tutino, Town Fair's Controller, wanted to assign to an experienced employee when the individual who had been fulfilling those responsibilities left the company. Tutino Affidavit ¶8; Balonze Dep. at 89:23-91:1. Plaintiff received a twenty-five cent per hour raise at the same time, notwithstanding the 3.5% raise she had just received in January 2001. Balonze Dep. at 102:4-12. At the time Ms. Tutino assigned plaintiff her new responsibilities, another employee was hired to assume most of the data entry responsibilities of the person who had left. Tutino Affidavit ¶8; Balonze Dep. at 118:22-119:5. Ms. Tutino also told plaintiff

to let her know if any of plaintiff's new responsibilities posed a problem for plaintiff's hand. Balonze Dep. at 89:23-91:1.

16.    Notwithstanding this instruction, plaintiff said nothing to Ms. Tutino at any time following this meeting about her job causing a problem with her hand or her finger. Balonze Dep. at 104:21-24; Tutino Affidavit ¶9.  She made no new contact with her doctor or any other health care provider concerning her hand at any time prior to June 2001.  Balonze Dep. at 135:22-25.

17.    While plaintiff attributes increased pain in her hand after February 2001 to new keying responsibilities assigned at that time by Ms. Tutino, she can offer no specific information as to how much additional keypunching time or how many additional daily keystrokes were added to her duties.  Balonze Dep. at 121:4-12, 121:19-122:3, 126:21-127:7.  Furthermore, plaintiff admits that she may have increased her computer use at work to do non-work related activities, such as letter writing, during that period.  Balonze Dep. at 135:22-136:18.  At no time did plaintiff request relief from any of the duties assigned to her in February 2001.  Balonze Dep. at 236:8-15.

18.    Dr. Arons directed in a note dated July 23, 2001 that plaintiff refrain from all keyboard duty and all keypunching with her right hand.  Balonze Dep. Exhibit 14. Ms. Balonze took sick leave and vacation through July 30.  Balonze Dep. At 163:3-164:18.  When she returned to work on July 31, Town Fair offered her a temporary light duty position that would comply with those restrictions.  Tutino Affidavit ¶14; Balonze Dep. at 155:17 – 157:9.  The job duties of the position included opening and distributing mail, and answering the telephones during the receptionist's break periods, including

6

the lunch break.  Tutino Affidavit ¶13; Balonze Dep. at 158:3-14.  The hours required in the new position were 10:00 a.m. until 2:00 p.m. four days per week, but Town Fair offered Ms. Balonze the opportunity to work those hours five days per week if she wished.  Tutino Affidavit ¶13; Balonze Dep. at 158:15-24.  These hours were based on the fact that telephone coverage during the receptionist's break times, including the lunch hour, was the most significant duty included in the new position.  Tutino Affidavit ¶¶13, 14.

19.     When plaintiff returned to work on July 31, 2001, she informed Ms. Tutino that  she would not be able to work during the receptionist's lunch break on August 1 or August 3, because she had already scheduled physical therapy appointments during those hours.  Tutino Affidavit ¶14;  Balonze Dep. Exhibit 15.  The therapy appointments typically required her to spend between one and one-and-one-half hours away from the office.  Balonze Dep. at 32:2-9.  Ms. Tutino asked plaintiff to change the appointment times, but plaintiff refused to do so, notwithstanding her awareness that the therapy center was open before and after her work hours.  Tutino Affidavit ¶14; Balonze Dep. at 166:20 – 168:12.

20.     When plaintiff came to work the following day, Ms. Tutino gave her a letter stating "[Y]ou have advised us that you have scheduled physical therapy during these [10:00 a.m. to 2:00 p.m.] working hours and that the schedule cannot be changed.  For business reasons, this is not acceptable to us and we cannot further modify the hours for the light duty position that meets your scheduling needs.  We have notified our worker's compensation insurance carrier that we have no light duty position and are

7

unable to offer you any light duty at this time. Please contact me when your doctor authorizes you to return to your normal duty." Tutino Affidavit ¶14; Balonze Dep. Exhibit 16. Ms. Tutino and Michael Barbaro, Town Fair Tire's Senior Vice President, met with plaintiff and explained that because her therapy appointments would prevent her from fulfilling the telephone coverage duties of the light duty position she had been offered, and because there was no other light duty work available that involved no keyboarding, the light duty offer was withdrawn. Ms. Balonze would receive Workers Compensation benefits until her doctor indicated what permanent restrictions would govern her work. Tutino Affidavit ¶14. Ms. Balonze admits that she did not pay attention to what Ms. Tutino and Mr. Barbaro said during this meeting. Balonze Dep. at 185:9-186:6; 187:9-17. After the meeting, plaintiff left Town Fair Tire. Balonze Dep. at 199:1-4.

21. While plaintiff now claims that there were other job duties that she could have performed at Town Fair Tire instead of, or in addition to those included by defendant in the proposed light duty position, she did not say anything about any such other duties to Ms. Tutino at the time. Balonze Dep. at 160:21 – 162:20; 206:1-6.

22. In a "Progress Note" dated August 20, 2001, a copy of which was sent to Ms. Thomas at Town Fair Tire, Dr. Arons released Ms. Balonze to perform "two-handed modified duty, non-repetitive, with little or no keying," thus making permanent the restrictions he had imposed as of July 23. Balonze Dep. at 202:4-203:14; Balonze Dep. Exhibit 19. Ms. Balonze also delivered to Ms. Thomas a standard form of return-to-work note, signed by Dr. Arons, which stated that Ms. Balonze "Should be excused from Regular Full Duty Work at Town Fair . . . permanently" and that she was "released to

Modified Duty – 2 hands – Non repetitive – No Keying." Balonze Dep. at 200:14 –

201:12; Balonze Dep. Exhibit 18.

     23.    On August 27, 2001, Town Fair Tire notified plaintiff by letter that because

keyboarding was an essential function of the position she had held prior to the reinjury

of her finger, and because Town Fair Tire had no other positions available that did not

require use of a keyboard, Plaintiff's employment was terminated. Balonze Dep. at

203:20-204:8; Balonze Dep. Exhibit 20; Tutino Affidavit ¶15.

     24.    Plaintiff did not, upon her receipt of this letter or later, notify anyone at

Town Fair that she could, in fact, do work that required keyboarding. Balonze Dep. at

200:17-202:3.


Work Environment at Town Fair Tire

     25.    Plaintiff claims that the work environment at Town Fair Tire was

continuously hostile from May 1999 through July 2001. Balonze Dep. at 180:15-22.

Nevertheless, during that period of over two years, she never told anyone at Town Fair

Tire, other than her husband, that she considered the environment hostile. Tutino

Affidavit ¶10; Balonze Dep. at 181:12-17, 218:18-22. Nor did she, during that period,

look for other employment. Balonze Dep. at 180:19-182:2.

     26.    Plaintiff claims, in particular, that she was subjected to verbal harassment

by her supervisor on an "almost daily" basis during the period May 1999 through July

2001. Balonze Dep. at 212:16-213:18. She claims that Ms. DaCorte called her

"names," like "gimpy" and "useless." Other than asking Ms. DaCorte "a few times" to

stop using such names, however, plaintiff did not complain or make any other attempt to put a stop to the alleged conduct. Balonze Dep. at 213:5-214:10; Tutino Affidavit ¶10.

27.    Notwithstanding the nonharassment policy that was in place at Town Fair Tire at the time of the harassment alleged, Ms. Balonze did not report any harassment by Ms. DaCorte at any time. Balonze Dep. at 218:4-22; Balonze Dep. Exhibit 1; Tutino Affidavit ¶10.

28.    Plaintiff also claims that she suffered "unwarranted humiliation" by Ms. Tutino. The only action or conduct by Ms. Tutino that she claims to have constituted such humiliation, however, was Ms. Tutino's assignment of new work duties in February 2001. Balonze Dep. at 215:19-216:13.


Release of Plaintiff's Workers' Compensation Claims

29.    Ms. Balonze's claim for Workers Compensation benefits was first filed in 1999. Town Fair's Workers Compensation insurance has paid for all treatment for Ms. Balonze's finger condition. Tutino Affidavit ¶6.

30.    After she was discharged by Town Fair Tire, plaintiff filed a claim with the Workers' Compensation Commission alleging that she had been discharged in violation of C.G.S. 31-290a. Balonze Dep. at 206:7-207:17; Balonze Dep. Exhibit 25. That section provides: "No employer who is subject to the provisions of [the Workers Compensation statute] shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers'

compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of [the Workers Compensation statute]."

31.    On August 7, 2001, at a time when she was represented by counsel, plaintiff signed a stipulation constituting a full and final settlement of the section 31-290a claims. Balonze Dep. at 208:4 – 209:9; Balonze Dep. Exhibit 25.

32.    Notwithstanding her receipt of Workers Compensation benefits and her release of her claim under C.G.S. §31-290a, in this action plaintiff seeks compensation for lost earning capacity, and for alleged physical and mental suffering flowing from her May 4, 1999 occupational injury at Town Fair Tire. Balonze Dep. at 229:10-235:17; 261:3-18; Balonze Dep. Exhibit. 6.


Treatment of Male Employees With Permanent Medical Restrictions

33.    Town Fair Tire has a policy of offering light duty work if available to employees who, due to medical restrictions, cannot perform all of the essential functions of their positions. When the light duty position carries less responsibility than the employee's regular job, or has an established salary or wage that is lower than the employee's regular position, the employee is paid at the lower rate. Workers Compensation makes up a portion of the difference in these circumstances. Tutino Affidavit ¶17.

34.    Since 2001, several male Town Fair Tire employees who were injured and were authorized by their doctors to return to work with medical restrictions were offered (and accepted) light duty positions with less responsibility and a lower rate of pay than

they had been earning in their regular jobs.  They returned to their previous positions at full pay when their restrictions were lifted.  One male employee who was offered a light duty position consistent with his physical limitations failed to appear for work, and his employment was terminated. Another male employee accepted a temporary light duty position at a reduced rate of pay; after nearly six months in the position he inquired about a "permanent light duty" position with more hours and higher pay.  Town Fair Tire had no permanent position open for which he was qualified and that was within his restrictions, and his employment was therefore terminated.  Tutino Affidavit ¶18.

35.    Town Fair did not treat Ms. Balonze differently than similarly situated male employees with respect to its offer to her of a temporary light duty position, the reduced hourly rate associated with that position, or its termination of her employment when she was placed under permanent restrictions by her physician, and the company had no available positions consistent with those restrictions.  Tutino Affidavit ¶18.

Jonathan B. Orleans (ct05440)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT  06604
Tel. (203) 333-9441
Fax: (203) 333-1489
e-mail: jorleans@znclaw.com

Attorney for Defendant Town Fair Tire
Centers, Inc.

12

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via first class U.S.

Mail, postage prepaid, on this date, to:

Mickell Balonze
601 Longfellow Drive
Branford, CT 06405

Dated at Bridgeport, Connecticut on this 28th day of May, 2004.

Jonathan B. Orleans