UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICKELL B. BALONZE  :
         :
v.         :
         : NO. 3:02CV02247 (JCH)
TOWN FAIR TIRE CENTERS INC. :
         :  June 21, 2004

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER**

**OBJECTION TO THE DEFENDANT'S MOTION FOR SUMMARY**

**JUDGEMENT.**

### The Nature of the Proceedings

The Plaintiff, Mickell Balonze, a former employee of Defendant Town

Fair Tire Centers, Inc. ("Town Fair" of "Town Fair Tire"), brought this

action claiming that TownFair Tire discriminated against her on the basis of

a disability (specifically, a condition of her right master hand which

prevented her from performing repetitive manual tasks) and her gender, in

violation of the Americans With Disabilities Act and Title VII of the Civil

Rights Act of 1964. The Plaintiff hereby states her objection to the

Defendant's Motion for Summary Judgement on all claims, contending: (1)

1

that Mrs. Balonze was disabled within the meaning of the ADA; (2) that

because she was disabled, Town Fair Tire did not fulfill its reasonable

accommodation obligations because it changed her job duties to include

tasks that were outside of her existing medical restrictions, and when her

condition reoccurred due to those changes, harassed the Plaintiff and refused

to allow her to continue working in a light duty position because she

scheduled her physical therapy appointments during working hours; (3) that

Town Fair Tire did in fact treat Mrs. Balonze differently than it treated

similarly situated male employees; and (4) that as the Plaintiff is not seeking

damages for the injury itself, but rather damages for the intentionally

discriminatory actions by the Defendants. The Plaintiff therefore believes

these injuries to be compensable under Connecticut General Statue 46a-104,

the Americans with Disabilities Act, and the Title VII and requests that the

Defendants Motion be denied.

<u>Statement of Facts</u> 1

<u>Plaintiff's Employment by Town Fair Tire Centers Inc</u>.

In June 1997, the Defendant Town Fair Tire Centers Inc. hired the Plaintiff Mickell Balonze as a part time data entry clerk for the Accounts Payable Department.  Her primary responsibilities were entering the Accounts Payable (tire and wheel) invoices.  Beginning October 1998 Kathryn Tutino assigned the Plaintiff the added responsibility of entering the company's advertising  (radio, television, billboard, and newspaper) invoices for payment. Beginning August 1999, Michael Barbaro assigned the Plaintiff the additional responsibility of tracking on a spreadsheet, all the credits that were received by Town Fair Tire in connection with the Bridgestone/Firestone Recall.

On July 23, 2001 the Defendant Town Fair Tire Centers Inc. assigned the Plaintiff to a light duty position.  On August 1, 2001 the Defendant Town

---

1 The facts set forth in this Statement of Facts are taken from the Plaintiff's Local Rule 56(a) 2 Statement. Supporting evidentiary citations have been omitted here, but are contained in that Statement.

Fair Tire informed the Plaintiff that they were removing her from that

position because she had scheduled medical appointments during her work

hours to receive treatment for the work related injury.

the Defendant Town Fair Tire Centers Inc. terminated the Plaintiffs

employment on the basis that every clerical position available required some

keyboard use.


Plaintiff's Injury and Town Fair Tire's Responses

   On May 4, 1999, the Plaintiff experienced pain and swelling in her right

index finger and hand.  The Plaintiff sought and received medical treatment

for that condition from May 1999 through October 1999 when she

underwent a surgical procedure to correct the condition.  Beginning May

1999, the Plaintiff was severely restricted from performing many activities

that are of central importance to most peoples daily lives because she had

limited or no use of her right master hand. The Plaintiff continued receiving

medical treatment for the condition until October 2000 when she was

released by her treating physician to "Maximum Medical Improvement", she

was assigned a Permanent Partial Disability Rating, and advised by her

treating physician that she would need no further medical treatment unless her physical condition worsened or reoccurred. The Plaintiff continues to be severely restricted from performing tasks that are of central importance to most peoples lives because the injury affected the use of her right master hand and resulted in permanent physical limitations of that use.

The Plaintiff's treating physician cannot speculate as to the facts of the limitations as he is not aware of them because the Plaintiff did not express limitations in her life outside of work to him during the course of her treatment. As a result of the condition that developed in the Plaintiff's right master hand, beginning on or about May 1999 the Plaintiff frequently worked under the medical restrictions of "modified" or "light duty" because she had limited or no use of her right master hand.

In response to the Plaintiff's medical condition, the limited use of her right master hand and the frequent medical restrictions requiring "modified" or "light duty", the Defendant Town Fair Tire Centers Inc. made significant changes in her job duties. In September 1999, the Plaintiff Mickell Balonze was relieved of her primary responsibility of entering the Accounts Payable

(tire and wheel) invoices and the Defendants Town Fair Tire Centers Inc.
assigned her other various office duties of filing those invoices, matching
invoices with receivings, matching invoices for the ATW program, covering
the Receptionist break for two morning breaks and one lunch break, opening
store bags, and distributing internal mail and faxes.  The Plaintiff continued
in her Advertising job duties.   No portion of the Plaintiffs job duties
following these changes made by the Defendant in September 1999 caused
the Plaintiff any problem with her hand.

In October 2000 the Plaintiff's treating physician certified that she had
reached Maximum Medical Improvement and released her to her "current
regular duty work capacity".  He assigned her a permanent partial disability
rating of 17% of the right master index finger, equalivant to 3% of the right
master hand.

In February 2001 the Defendant's breached any obligation of
"reasonable accommodation" when, against the Plaintiff's objections, they
reassigned her job duties that required keyboard use to perform repetitive
data entry tasks.  These job duties added additional times the Plaintiff would

be required to use the keyboard, specifically to perform repetitive data entry work, which was clearly outside the Plaintiff's "current regular duty work capacity", and were an absolute violation of the medical restrictions under which the Plaintiff had been released to return to regular duty work.

The Plaintiff believed that Kathryn Tutino's decision to reassign her job duties that Ms. Tutino knew would be difficult or physically impossible for the Plaintiff to perform was a deliberate intentional act by Ms. Tutino as an attempt to get the Plaintiff to voluntarily quit. The Plaintiff had repeatedly been subjected to unwanted harassment by her immediate supervisor, Andrea DaCorte. Since her condition required medical restrictions and limitations in the amount of keyboard work she could perform, the Plaintiff perceived her work environment to be hostile from the time she had incurred her injury and unable to report the unfair treatment she was receiving because the next person in the chain of command was the Vice President of Operations, Michael Barbaro, who is Andrea Dacorte's brother.

The Plaintiff began to experience recurring pain in her right master

hand beginning on or about March 2001. Initially, the Plaintiff experienced only moderate discomfort and tried alternative remedies. In June 2001 when the Plaintiff realized that the intensity and frequency of the pain was becoming increasingly unbearable, she again sought medical treatment. The Plaintiff asked for and accepted the first available medical appointment, which was in July 2001.

The Plaintiff did not increase her keyboard duties outside of her work environment because she did not own, nor have access to a computer at home. The Plaintiff did not increase her keyboard duties at work to perform non-work related activities other than on one occasion during a ten minute morning break (on or about February 2001) the Plaintiff typed a brief paragraph for a hearing in the Probate Court. The Plaintiff used her allotted ten-minute morning and afternoon breaks to go outside and have a cigarette every day. The Plaintiff left the company premises daily to go home fore lunch or meet friends at local restaurants during her allotted 45-minute lunch break. On two occasions that the Plaintiff can recall she stayed on the company premises for her allotted lunch break to attend a birthday

celebration for Neil Mellen (November 2000), and to attend the company Christmas Party.

Town Fair Tire provided workers compensation benefits for some of the treatment the Plaintiff received for her injury. The Plaintiff paid the required copayment charges for the initial doctors' visits and the required copay for many of her prescriptions. The Plaintiff was refused reimbursement by Joanne Sunter (the Defendants insurance representative) because Ms. Sunter told the Plaintiff that reimbursement for out of pocket expenses was the responsibility of the Plaintiff, and suggested that the Plaintiff contact her doctors and pharmacy for reimbursement. Town Fair Tire did contest the Plaintiff's claim for benefits to attend psychotherapy.

Aggravation of the Plaintiff's injury and Town Fair Tire's Light Duty Offer

On or about March 2001 the Plaintiff began to experience pain and reduced capacity in her right master hand. On or about April 2001 and continuing through June 2001 the Plaintiff noticed that the intensity and severity of the pain occurred with more regularity despite the Plaintiffs use

of over the counter remedies. In June 2001, the Plaintiff told to Kelly

Thomas that her condition had worsened and that she would need to return

to her doctor. The Plaintiff requested that Town Fair Tire authorize her to

schedule that appointment under the existing workers' compensation claim.

The Plaintiff was required to wait for that authorization before she could

schedule her appointment. In late June 2001, the Plaintiff received

the appropriate authorization and contacted her doctor, and scheduled the

first available appointment which was in July 2001. During the period from

July 2001 and ongoing through August 2001, the Plaintiff received medical

treatment for the reoccurrence of her original injury. The Plaintiff was

severely restricted from performing many tasks that are of central

importance to most peoples daily lives. The Plaintiff's treating physician

cannot possibly speculate as to what future restrictions may be imposed on

the Plaintiff as a result of her injury because, as far as the Plaintiff is aware,

the treating physician neither owns a crystal ball, nor possesses psychic

abilities. The Defendant has failed to provide factual evidence that disputes

that.

On July 23rd, 2001 the Plaintiffs treating physician placed the Plaintiff on light duty restriction and ordered her to refrain from all keyboard duty and all keypunching with her right master hand. The Plaintiff provided the Defendant Town Fair Tire with a copy of the note that directed those restrictions. That afternoon the Plaintiff was called into a meeting with Kathy Tutino and Michael Barbaro and informed that the Defendant Town Fair Tire was placing her in a light duty position to accommodate her medical restrictions. The Plaintiff was given a copy of the job duties, change in hours and new rate of pay during that meeting. The Plaintiff took the following day as a sick day due to the pain in her hand. The Plaintiff took vacation days through July 30th, 2001 that had been previously scheduled.

On July 31st, 2001 when the Plaintiff returned to work in the newly assigned light duty position, she immediately informed the Defendant that she had scheduled medical appointments to receive treatment for her injury. That same day, Kathryn Tutino told the Plaintiff to "reschedule the appointments or Kelly Thomas will reschedule them for you". Ms. Tutino told the Plaintiff that "I can't have you gone for an hour in the middle of the

day. You only work four hours as it is".

The Plaintiff attempted to speak with Ms. Tutino about the issue before leaving work that afternoon. Ms. Tutino refused to discuss the matter so the Plaintiff simply told her "I will not reschedule these two appointments".

On August 1st, 2001 the Plaintiff punched her time card and was immediately called into a meeting with Kathryn Tutino and Michael Barbaro. During that meeting the Defendants informed the Plaintiff that they considered it unacceptable that she had scheduled medical appointments during her work hours, when she should have scheduled them on her own time and that they were removing her from the light duty position.

During that meeting the Defendants said nothing to the Plaintiff about the medical appointments conflicting with her ability to provide coverage for the receptionists break. The Defendants made that claim only after the Plaintiff had filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities. During said meeting, the Plaintiff asked Ms. Tutino if she was being fired. When Ms. Tutino did not respond, the

Plaintiff asked a second time. When Ms. Tutino ignored the question for a

second time, the Plaintiff believed that her employment was in fact being

terminated. The Plaintiff was not given any opportunity by Ms. Tutino or

Mr. Barbaro to have any further discussions about the job duties that she

could perform, in spite of the fact that the Plaintiff knew that the Defendants

had received a letter from her treating physician dated July 24th, 2001 that

had given specific information about the job duties she could perform.

The Plaintiff was also aware that the Defendants knew the Plaintiff had

the unrestricted ability to use her left hand, which was neither under

medical restrictions, nor had ever received medical treatment.


Plaintiffs Discharge

    In a "Progress Note dated August 20, 2001, a copy of which was sent

to Ms. Thomas at Town Fair Tire, Dr. Arons stated that the Plaintiff "she is

an individual who can only tolerate repetitive keyboard work, data entry and

keypunching for a limited finite period of time". He then released the

Plaintiff to perform modified duty restating the Plaintiffs previous medical

restrictions of October 2000, when she was released to her "current regular duty work capacity" in October 2000, which was a position the Defendants acknowledge had been restructured to significantly reduce the "amount of data entry and keyboarding work required of her". The Defendants chose to make changes in the Plaintiffs "regular duty work" in February 2001, against her objections, with intentional disregard for her medical restrictions and without consulting her treating physician.

Plaintiffs Hostile Environment Claim

Beginning May 1999 and continuing through July 2001, the Plaintiff was subjected to verbal harassment by her immediate supervisor Andrea DaCorte. Ms. DaCorte repeatedly called the Plaintiff names such as "gimpy" and "useless". Ms. DaCorte complained each time the Plaintiff notified her that she would have to leave for medical appointments relating to her injury that the Plaintiff should "stop milking her injury".

On more than one occasion, the Plaintiff told Ms. DaCorte that her behavoir was inappropriate and asked her to stop. On many occasions the

Plaintiff closed the door to her office in a futile attempt to stop the harassment; however, Ms. DaCorte would call the Plaintiffs office and was equally abusive on the phone.

The Plaintiff is unaware of the statutes, either State or Federal, that requires a party who is being subject to harassment to quantify the requests to stop the harassment with a specific number. The Plaintiff made numerous requests to Ms. DaCorte to stop her unwanted harassment and rightfully should have only had to ask once.

During that time the Plaintiff heard "hallway talk" from her coworkers that Ms. Tutino had also complained about Ms. Balonzes repeated abscenes from work to attend medical appointments for her work related injury. The Plaintiff believed that the Defendants Town Fair Tire were intentionally creating a hostile environment in an attempt to get the Plaintiff to voluntarily quit.

The Plaintiff did mention the hostility she was experiencing in her work environment to Shauna Hindman and one coworker. The only other person to whom the Plaintiff could have expressed concern over the situation was

the Vice President of Operations Michael Barbaro who is Andrea DaCortes

brother.  The Plaintiff did not believe that Mr. Barbaro would take any

action towards his own sister.


Plaintiffs Claim for Retaliatory Discharge Under Connecticut General
Statute 31-290a

The Plaintiff first filed a claim for Worker's Compensation Benefits

in 1999. Town Fair Tires Worker's Compensation insurance has paid for

most of the treatment for Mrs. Balonzes condition.

After she was discharged by Town Fair Tire, the Plaintiff filed a claim

with the Worker's Compensation Commission alleging that she had been

discharged in Violation of the Connecticut General Statute 31-290a.

Rather than risk an unfavorable decision by the Worker's

Compensation Commission the Defendants Town Fair Tire voluntarily

agreed to pay the Plaintiff the back wages she was seeking and agreed to

the stipulation that the settlement was for the back wages only and that the

agreement "in no way resolves the Claimants claim for Worker's

Compensation Benefits under chapter 568 or the claimants ongoing

CHRO claim". The Plaintiff is only seeking compensation for the injuries

suffered as a direct result of the Defendants intentional discriminatory

action.

Town Fair Tires Light Duty Policy

On July 23 2001, the Defendants Town Fair Tire did not have a light

duty policy. They implemented the current light duty policy on August 8th,

2001.

It is not possible that this policy, which was created after the fact, could have

been applied to Mrs. Balonze

From May 1999 through October 2000 the Plaintiff had been

restricted to "modified" or "light-duty" and on no occasion during that

time did the Defendants reduce the Plaintiffs work hours or rate of pay

because the policy that they refer to simply did not exist.

The Defendants, Town Fair Tire, however, terminated Mrs. Balonze

not because her medical condition required light-duty restrictions, but

because she scheduled medical appointments for treatments for a work related injury during work hours.

Argument

I.    SUMMARY JUDGEMENT STANDARD

Summary Judgement should not be granted where there is a genuine issue of material fact and the moving party is not entitled to judgement as a matter of law. The court should, however, resolve any ambiguities and draw all inferences in favor of the nonmoving party. *Munck,* 251 F.Supp.2d at 1081; *Beason,* 213 F.Supp.2d at 107.

II.    MRS. BALONZE WAS DISABLED WITHIN THE MEANING OF THE ADA.

The Plaintiff's complaint may fairly be read to allege that Town Fair Tire discriminated against her on the basis of her disability, by harassing her, failing to provide reasonable accommodation for her condition, and ultimately discharging her. The Plaintiff has met the *prima facie* case of

discrimination under the ADA because the Plaintiff has shown: (1) That Town Fair Tire is subject to the statue; (2) That she was disabled within the meaning of the ADA; (3) That she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) That she suffered an adverse employment action because of her disability.

The Defendants do not dispute that the Plaintiff has a "physical impairment". The Affidavit of the Plaintiff, Mickell Balonze sufficiently establishes that the impairment qualifies her as disabled under the ADA because it severely restricts (her) from performing activities that are of central importance to most peoples daily lives, and gives rise to a genuine issue of fact for trial.

The Defendants regarded Mrs. Balonze as being precluded from "a particular job of choice" when they made permanent changes to her job duties in September 1999. The Affidavit of Kathryn Tutino sufficiently establishes in September 1999 that the Defendants understood Mrs. Balonzes physical condition to require "permanent adjustments" by "reducing the amount of keyboarding required of her".

III.    ASSUMING PURELY FOR THE SAKE OF ARGUMENT THAT
PLAINTIFF WAS DISABLED, SHE CAN ESTABLISH THAT
SHE WAS "QUALIFIED" AND THAT TOWN FAIR TIRE
FAILED TO REASONABLY ACCOMMODATE HER DISABLITY

Prior to the Plaintiffs discharge, the Defendants had been notified

by her treating physician that Mrs. Balonze was restricted to "little of no

keyboard use". Even under these restrictions, the Plaintiff could use her

right master hand to perform "limited keying", additionally the Plaintiff

had full, complete and unrestricted use of her left hand which she could

have used to perform any keyboard activity required of her. Prior to her

termination the Plaintiff had been employed by the Defendants for four

years. During that time, Mrs. Balonze received good employee reviews,

consistent salary increases and added responsibilities. Mrs. Balonze had

performed work for several different departments within the company and

had the knowledge and ability to continue performing the essential functions

of many positions.

A reasonable accommodation by the Defendants would merely have

constituted placing the Plaintiff in a position that required limited keying,

similar to the position the Plaintiff held from September 1999 through

February 2001 or the light duty position she had been assigned to on July 23rd, 2001.

The Defendants withdrew the light duty position from the Plaintiff solely because she had scheduled medical appointments. The law, not only does not require that the Plaintiff seek medical treatment during non working hours for a work related injury, rather specifically states "An employer CANNOT require an injured or ill employee to receive medical treatment outside of his or her regular work hours, if such treatment is available during regular work hours". The Plaintiff was merely exercising her rights under the law based on information presented to her by the Worker's Compensation Commission.

## IV.   TOWN FAIR TIRE DID TREAT THE PLAINTIFF DIFFERENTLY THAN IT TREATED SIMILARLY SITUATED MALES

The affidavits of Mickell Balonze, Michael Balonze and John Paxton and the Defendants own exhibits sufficiently establish Plaintiff's claim of disparate treatment.

V.    THE PLAINTIFF CAN RECOVER ALLOWABLE DAMAGES
      FOR THE INTENTIONALLY DISCRIMINATORY ACTIONS
      AND THE INJURIES SUFFERED BY THE PLAINTIFF AS A
      RESULT OF THOSE ACTIONS.

The Plaintiff is not seeking damages for the injury to her hand, rather

for the injuries she suffered as a direct result of the Defendants intentionally

discriminatory actions.  The Plaintiff is permitted to seek allowable damages

under Connecticut General Statute 46a-104, the ADA and Title VII and

should not be precluded from her right to due process to proceed with this

claim.

Conclusion

The Plaintiff injured her finger at work. The Defendants recognized

that injury to be of a permanent nature and in September 1999 made

significant changes in her job duties. The Defendants breached their

obligation of "reasonable accommodation" when they changed her job

duties in February 2001. The Plaintiff had a reoccurrence of the original

injury and exercised her rights under applicable Worker's Compensation

laws. The Plaintiff was a qualified individual under the Americans With

Disabilities Act. The Defendants discharged the Plaintiff because she had scheduled medical appointments directly related to that injury and should not be precluded from her right to due process to proceed with these claims.

Ms. Tutino gave the Plaintiff a letter which stated " You have advised us that you have scheduled physical therapy appointments during these [10:00 a.m. to 2:00 p.m.] working hours and that schedule cannot be changed. For business reasons, this is not acceptable to us and we cannot further modify the hours for the light duty position that meets your scheduling needs. We have notified our worker's compensation insurance carrier that we have no light duty position and are unable to offer you any light duty at this time. Please contact me when your doctor authorizes you to return to work".

On August 20th, 2001, the Plaintiffs physician did release Mrs. Balonze to return to work. The Plaintiffs, physician, Dr. Arons stated that Mrs. Balonze could perform "two-handed modified duty, non-repetitive, with little or no keying. Thus restating the same medical restrictions the Plaintiff had been released to work under in October 2000 when she had

reached Maximum Medical Improvement.

The Plaintiffs employment was terminated on August 27th, 2001.

The Plaintiff has established all the required elements of her *prima facie* case and respectfully requests that the Defendants Motion for Summary Judgement be denied and that this case be allowed to proceed to Trial.

,

Respectfully Submitted,

Mickell B. Balonze, Pro Se
601 Longfellow Drive
Branford, CT 06405
(203)-488-1981

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been hand delivered

on this the 21st day of June 2004, to:

> Jonathan B. Orleans
> Zeldes, Needles & Cooper,
> 1000 Lafayette Blvd., Suite 500
> Bridgeport, CT 06604

Mickell B. Balonze