UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICKELL B. BALONZE         :
                                :

V.                           :      NO. 3:02CV02247 (JCH)
                                 :

TOWN FAIR TIRE CENTERS,INC.:
                                 :      JUNE 21, 2004

## LOCAL RULE 56(a)2 STATEMENT

Pursuant to D. Conn. L. Civ. Rule 56(a)2, and in support of her objection to the Defendant Town Fair Tire Centers, Inc, Motion For Summary Judgement, the Plaintiff states that for the purposes of her objection there are genuine issues to be tried as to the material facts set forth below.

Referenced deposition transcripts, exhibits, and affidavits from Mickell B. Balonze, Michael P. Balonze, Shauna Hindman, John Paxton Jr, and Heidi Meyer have been submitted as Exhibits to the Declaration of Mickell B. Balonze.

Plaintiffs Employment at Town Fair Tire

1.      Plaintiff admits.

2.    Plaintiff admits.

3.    Plaintiff admits

Plaintiffs Finger Condition

4.    Plaintiff denies.

Since May 1999, the condition of the Plaintiffs hand has prevented and restricted her from performing the following activities; braiding hair, putting on and removing bracelets, lifting objects over 15-20 pounds, grocery shopping, opening bottles, jars or containers with airtight vacuum and/or safety seals, flossing teeth, turning keys which are used for deadbolt locks and performing repetitive manual tasks.  Affidavit of Mickell B. Balonze #8; Affidavit of Michael P. Balonze #10; Mickell Balonze Dep. at 36:10 - 25, 40:10 - 21, 41:6 - 11, 41:23 - 47:2 and 145:3 - 148:16.

5.    Plaintiff admits.

6.    Plaintiff denies.

For the one and one half years following this treatment (October 2000 until June 2001), the Plaintiffs condition remained unchanged.  The Plaintiff

therefore had no reason to seek medical treatment or converse with her treating physician regarding any complaints related to her hand. Mickell Balonze Dep. at 38:9 - 40:3.

In October 2000, when the Plaintiffs physician released her to "maximum medical improvement" he specifically stated that she "went back to work on a modified duty basis and to this day remains in a modified capacity avoiding repetitive data entry and keypunching". Dr. Aron's "progress note" October 12, 2000, page 1, paragraph 1. He assigned the Plaintiff a permanent partial disability of the right master hand". Dr Aron's "progress note" October 12, 2000 page 2, paragraph 3. The Plaintiffs physician further specified, "The Patient is discharged unless she has any future problems. She remains released to her current regular duty work capacity". Dr. Aron's "progress note" October 12, 2000, last sentence.

At work, the Plaintiff was unable to perform repetitive manual tasks and was limited in her use of a keyboard. In her life outside of work, the Plaintiff was severely restricted from performing the following tasks central to most people's lives as described in Plaintiffs response to #4. Affidavit of

Mickell Balonze #8; Affidavit of Michael Balonze #10; Mickell Balonze's

Dep. at 36:10 – 25, 40:10 – 21, 41:6 – 11, 41:23 - 47:2, 145:3 - 148:16.

7.  Plaintiff denies.

From May 1999 and continuing through August 2001, during the time

The Plaintiff was receiving medical treatment, she did not at any time

discuss with her physician the restrictions in her life outside of work.

Affidavit of Mickell Balonze #8; Mickell Balonze Dep. at 39:23 - 40:3.

During Dr. Aron's deposition, he responded to questions posed by the

Defense regarding the effect the injury "might" have on Mrs. Balonze's day

to day life.  He offered only his "personal opinion" which was not based on

first hand knowledge.  Dr. Arons Dep. at 85:2 - 18.  As the Plaintiffs injury

was work related and caused by repetitive data entry work, and the Plaintiff

did not own a computer at home, the Plaintiff did not believe her restrictions

outside of work were relevant to nor would affect the outcome of her

treatment.  Dr. Aron's Dep. at 50:4 - 51:3; Mickell Balonze's Dep. at 141:3 -

142:2.

8.  Plaintiff denies.

4

The Plaintiff began to experience an increased level of pain in her right hand in March 2001. The Plaintiff tried over the counter remedies and then had to wait for appropriate authorization from the Defendants Worker's Compensation Insurer to schedule an appointment. The Plaintiff took the first available appointment that was offered to her. Defendant's Discovery Document D00734; Dr. Aron's Dep. at 46:1 - 9; Mickell Balonze's Dep. at 142:3 - 143:11.

According to the Plaintiffs treating physician that was not an uncommon scenario. Dr. Aron's Dep. at 46:10 – 47:13. The Plaintiff began receiving medical treatment in July 2001, and continued to receive medical treatment through August 2001. The Plaintiff is not currently receiving treatment for her hand.

9) Plaintiff denies.

Since May 1999, the Plaintiff has been and remains severely restricted from engaging in activities that are of central importance to most people's daily lives. Those activities are as previously stated in Plaintiffs response to #4. Affidavit of Mickell Balonze #8; Affidavit of Michael Balonze #10;

5

Mickell Balonze's Dep. at 40:10 – 21, 41:6 – 11, 41:23 - 46:14, 145:3 –

148:16; Dr. Aron's Dep. at 85:2 - 18.  The Plaintiff's physician cannot

possibly speculate as to any future restrictions that may be imposed on the

Plaintiff as a result of her injury and the Defendant cannot rely on such

speculation as evidence in support of their claim.

## TOWN FAIR TIRE'S RESPONSE TO PLAINTIFFS HAND CONDITION

10) Plaintiff denies.

Town Fair Tire provided Workman's Compensation Benefits for most

of the treatments.  The Plaintiff paid the co-payments for the initial doctor's

visits and prescriptions.  She was denied reimbursement for those out of

pocket expenses by Joan Sunter at RSKCO (Town Fair Tires Worker's

Compensation Insurer).  Town Fair Tire disputed the Plaintiff's need to

attend psychotherapy.  The Plaintiff paid the required co-payments for her

visits and her private medical insurance paid the balance.  Defendant's

Discovery Document D00264, D00353 and D00081.

11.    Plaintiff admits.

12.    Plaintiff admits.

13.    Plaintiff denies as stated.

The Plaintiff admits that in September 1999, the Defendants made "significant changes" to her job duties in order to reduce the amount of data entry that was required of her.  Mickell Balonze's Dep. 35:8 – 13; Plaintiff's Discovery Document #6 - 5 – B.  The Defendant's current description of those job duties is an intentional attempt to mislead this court and contradict the Defendants previous statements submitted to the CHRO in response to and as evidence regarding that complaint. The Defendants, in their <u>Answer to Affidavit of Illegal Discriminatory Practice</u>, submitted to the CHRO on December 14th, 2001 stated, "Her new position involved certain duties (matching store records of wheels received with vendor invoices) that had previously been performed by another employee who left the company. Complainant's new duties included approximately one additional hour per month of data entry on a computer, but at the same time approximately one hour per month of calculator work previously performed by Complainant.

(Checking stores' bank deposits) was reassigned to another employee".

Defendant's Discovery Document D00413 page 2 response #6; Mickell

Balonze's Dep. at 35: 8 - 13, 49:2 – 5; The Plaintiff continued in her

advertising duties, which she estimates required approximately 30 hours per

month of keyboard use and dependant on the volume of the companies

advertising expenses. The Plaintiff was assigned to cover the receptionist's

lunch break for two morning breaks and one lunch break each week.

Defendant's D00602; Mickell Balonze's Dep. at 35:8 - 14 and 49:2 - 5.

In response to the CHRO complaint, the Defendants submitted different

schedules of job duties created after the fact. The Plaintiff was also assigned

the task of verifying the cash deposits (which required very limited keyboard

use), pulling A/R invoices, emptying store bags, and matching around the

wheel invoices with receiving paperwork and filing those invoices.

Defendant's Discovery Documents D00010, D00233, D00651, and D00234.

The Plaintiff admits that no portion of the job duties following these

adjustments by the Defendants in September 1999 caused her any problem

with her hand.

8

14.    Plaintiff admits.

15.    Plaintiff denies as stated

In February 2001, the Plaintiff was called into a meeting with Kathryn Tutino and informed that she was changing the Plaintiffs job duties. The Plaintiff was aware of the amount of repetitive data entry work those duties required because she shared and office with the employee who was performing those duties (Robin Sherrick) at that time. Mickell Balonze's Dep. at 89:23 – 91:21; Thomas Dowler's Dep. at 23:7 – 16; Defendant's Discovery Document D00240. Because of the Plaintiffs knowledge of those requirements, during that meeting she stated her objections to Ms. Tutino about those duties being beyond her medical restrictions and the probability that those duties might cause the Plaintiff reinjury. Dr. Aron's Dep. at 51:11-25, 52: 15 – 24. Kathryn Tutino disregarded the Plaintiffs objections. It is worth noting that the Plaintiff also expressed an objection in August 1999 to a position that Kathryn Tutino discussed with the Plaintiff on that date. Mickell Balonze Deposition 34:1-13; Defendant's Discovery Document D01004; Plaintiff's Exhibit 6 – 5 - A. It is evident that the Plaintiff was

9

concerned about her physical condition and the limitations that her injury imposed upon her.  It is evident that the Plaintiff expressed those objections to Ms. Tutino on at least on previous occasion.  It is very likely that the Plaintiff expressed similar objections in February 2001.

16. Plaintiff denies.

Following the job changes in February 2001, the Plaintiff did express on a few occasions to her immediate supervisor, Andrea DaCorte, that her hand did bother her. Mickell Balonze's Dep. at 104:21 – 110:3.

17. Plaintiff denies.

The Plaintiff estimates her advertising duties required approximately 30 hours per month of keyboard work.  Plaintiff's Exhibit 6 – 5 – H; Dr. Aron's Dep. at 48:8 – 49:21; Mickell Balonze's Dep. at 80:21 – 81:25.  The Plaintiff has counted all of the keystrokes from wheel reset reports she has for the time period of 04/19/01 through 07/31/01 and can state that she performed a total of 3,969 additional keystrokes during that time period which is equivalent to 567 per week or 141 per day.  Plaintiff's Discovery Documents 6 - 5 - I, 6 – 5 - J, 6 – 5 – K, 6 – 5 – L, 6 – 5 – M, 6 –5 – N, 6 – 5 – O;

10

Mickell Balonze's Dep. at 112:22 – 121:16. The Plaintiff did offer an estimate of the number of keystrokes she performed with regard to the advertising expenses. Defendant's Discovery Documents D00223, and D00224; Plaintiff's Discovery Documents 6 – 5 – H; Mickell Balonze's Dep. at 82:7 – 92:3. Plaintiff cannot speculate as to the number of keystrokes she performed with regard to the price adjustments or cost changes during that time period because the Defendants have failed to provide those documents to allow the Plaintiff the opportunity to count noted changes. Mickell Balonze's Dep. at 122:4 – 123:2, 125:2 - 131:24.

18. Plaintiff denies.

On July 23rd, 2001, the Defendants did assign the Plaintiff a light duty position that accommodated her medical restrictions. The Plaintiff, in that position, was responsible for providing coverage for the receptionists break three times per week, two morning breaks and one lunch break. Mickell Balonze's Dep. at 35:8 – 13, 49:2 – 6; Defendant's Discovery Document D00743. The Defendants did not, at any time, state to the Plaintiff that they considered any one of the duties of that light duty position as more

11

"essential" than another.

19. Plaintiff denies.

When the Plaintiff returned to work on July 31st, 2001, she informed

Ms. Tutino that she would not be able to work during the receptionist's

lunch break on Friday August 3rd because she had been given appointments

to attend medical therapy. Defendant's Discovery Document D00745. Mrs.

Balonze did not specifically request times or dates, but rather took those

times and dates the receptionist at the therapy center gave her. Mickell

Balonze's Dep. at 143:10 – 24, 165:12 – 21; Dr. Aron's Dep. at 69:1 –

71:5. The Plaintiff intended to switch her scheduled time with another

employee who covered the receptionists Thursday lunch break. This was

frequently done among the employees who provided phone coverage in

order to accommodate their personal schedules without causing unnecessary

hardship to the employer. Depending on the location of the therapy

treatment, the appointments typically required Mrs. Balonze to spend

between one and one and a half-hours away from the office. Ms. Tutino

demanded that Mrs. Balonze reschedule her scheduled therapy appointments

12

and told her "you can reschedule these or [I will] have Kelly Thomas reschedule them for you". Ms. Tutino further stated to Mrs. Balonze, "I can't have you gone for one and a half hours in the middle of the day, you only work four hours a day as it is". The Plaintiff refused to reschedule the appointments because of the short notice and her concern about not receiving necessary medical treatments. Mickell Balonze's Dep. at 165:1 – 169:2; Plaintiff's Discovery Document 6 – 8 – C. Because the Plaintiffs injury was work related, the Plaintiff was simply exercising her rights based on the information given to her by Workman's Compensation at time her claim was filed. Plaintiff's Exhibit #1 WCC Info Packet page 24 Lost Time Paragraph 4.

20. Plaintiff denies as stated.

The Plaintiff admits that she was called into a meeting on August 1st, 2001 with Kathryn Tutino and Michael Barbaro. During that meeting, Kathryn Tutino did tell the Plaintiff that she was removing the Plaintiff from light duty because the Plaintiff had scheduled medical therapy appointments during her work hours. Defendant's Discovery Document D00018. Mickell

Balonze's Dep. at 182:17 – 184:17. During that same meeting, Kathryn Tutino specifically stated that she found it "unacceptable" because in her opinion the Plaintiff had plenty of time before and after work to make those appointments. Defendant's Discovery Documents D00703 and D00710. Neither Kathryn Tutino nor Michael Barbaro made any reference to the Plaintiffs phone coverage schedule. The Defendants asserted that basis for their claim after the fact in response to the Plaintiffs complaint filed with the CHRO. Defendant's Discovery Document D00414 #9. When the Plaintiff realized that she was being fired, she then stopped participating in the "conversation" because she realized anything she had to say would be pointless. Mickell Balonze's Dep. at 182:12 – 187:12; Defendant's Discovery Document D00260.

The Defendant had a male employee (Evan Shorkey) who occupied a position that required no computer work. He left Town Fair Tire on August 24th, 2001 to attend college. Plaintiff's Discovery Document 6 – 15 –B. The Defendants also placed classified ads for open positions requiring limited keying on July 29th, 2001 and August 15th, 2001. Plaintiff's Discovery

14

Documents 6 – 10 – D and 6 – 15 - B.

21. Plaintiff admits.

22. Plaintiff denies.

In a "progress note " dated August 20th, 2001, a copy of which was sent to Ms. Kelly Thomas at Town Fair Tire, Dr. Arons released Mrs. Balonze to perform "two-handed modified duty, non-repetitive, with little or no keying", thus restating the permanent restrictions he had imposed as of October 2001. Dr. Aron's Dep. at 37:21 - 40:14, 41:1 - 42:8; Progress Note August 20, 2001. In that same note, Dr. Arons stated "…she is an individual that can only tolerate repetitive keyboard work, data entry and keypunching for a limited finite period of time". Dr. Arons never stated that the Plaintiff could not do ANY keyboarding. Consultation Report Dr. Jeffrey Arons page 3 paragraph 3 and page 4 paragraph 4; Dr. Aron's Dep. at 61:2 - 22; Affidavit of Heidi Meyer #7 - 11; Plaintiff's Exhibit 2 Royal Doulton Office Procedures.

23. Plaintiff admits.

24. Plaintiff denies as stated.

15

The Plaintiff did believe her ability to perform limited keyboard use was clearly stated in the progress note sent by Dr. Arons on 08/20/01. Progress Note August 20, 2001; Dr. Aron's Dep. at 51:7 – 60:22. The Defendants did not at any time ask Mrs. Balonze if she could do any work that required keyboarding. Nor did the Defendants contact the Plaintiffs treating physician for clarification. Dr. Aron's Dep. at 43:3 - 45:9, 50;4 - 22. During the meeting on August 1st, 2001, the Plaintiff believed that Ms. Tutino had already made the decision to put the Plaintiff out and not let her return to work. The Plaintiff did not believe that anything she might have said at that time would have changed that decision. Defendant's Discovery Document D00260; Plaintiff's Discovery Documents 6 – 10 – D

## WORK ENVIRONMENT AT TOWN FAIR TIRE

25. Plaintiff denies.

The Plaintiff did express the hostile work environment to her sister, Shauna Hindman. Affidavit of Shauna Hindman #7 and #8. The Plaintiff

16

also expressed it in limited detail to Thomas Dowler.  Thomas Dowler's

Dep. at 26:3 – 9, 28:7 – 17, 33:1 – 35:19, 43:8 – 20.

The Plaintiff did not look for other employment because she had a job

and an existing injury that had she left would not have been covered under

Town Fair Tires Workman's Compensation Insurance or under her private

insurance.

26. Plaintiff denies.

Beginning May 1999 and ongoing through July 2001, The Plaintiff

was harassed almost daily by her Supervisor, Andrea DaCorte.  Affidavit of

Mickell Balonze #6 and #7.  The Plaintiff felt her work environment was

made hostile intentionally as an effort to get the Plaintiff to voluntarily quit.

Mickell Balonze's Dep. at 161:13 – 16, 180:7 – 181:15.

On more than one occasion while she was being harassed by Ms.

DaCorte, the Plaintiff told Ms. DaCorte that her behavior was unwanted,

inappropriate and asked her to stop.  Mickell Balonze's Dep. at 104:21 –

110:18.  The Plaintiff us not aware of any Law whether Federal or State,

which requires the Plaintiff to quantify her requests with a specific number.

27. Plaintiff admits.

The Plaintiff did not report the harassment to Kathryn Tutino because she believed Kathryn Tutino was a contributing factor towards the hostile environment and did not believe she would take any appropriate action against Ms. DaCorte. The only other person who had the authority to change the situation was the Vice President of Operations, Michael Barbaro. The Plaintiff did not report the harassment to him because he is Andrea DaCorte's brother and the Plaintiff did not believe he would take any appropriate action against his own sister. Mickell Balonze's Dep. at 212:16 – 214:16, 218:7 – 219:23; Affidavit of Shauna Hindman #7 and #8.

28. Plaintiff denies.

Ms. Tutino caused the Plaintiff unwarranted humiliation when she treated the Plaintiff differently than other injured employees. The Plaintiff also overheard a conversation between Ms. Tutino and Andrea DaCorte during which Ms. Tutino questioned Ms. DaCorte about why Mrs. Balonze was attending therapy during work hours. At that time, Kathryn Tutino said nothing directly to the Plaintiff regarding her therapy schedule but the

Plaintiff came to believe her attendance of medically necessary appointments was affecting Kathryn Tutino's opinion of her as a good employee.

Kathryn Tutino caused the Plaintiff further unwarranted humiliation after she was terminated when she voluntarily gave the Plaintiff's former husbands attorney confidential employee documents in response to a subpoena duces tecum. Kathryn Tutino's disclosure of those documents was a deliberately retaliatory action against the Plaintiff in response to the complaint the Plaintiff had filed with the CHRO. Defendant's Discovery Documents D00040, D00041, D00042, and D00043. The Plaintiff believes that Kathryn Tutino's voluntary disclosure of those employee documents breached any reasonable expectation of confidentiality with regard the Plaintiffs employment and termination.

RELEASE OF WORKERS COMPENSATION CLAIMS

29. Plaintiff denies.

Town Fair's Worker's Compensation Insurance paid for most of the

19

Plaintiffs treatment.  The Plaintiff paid the necessary co-payments for the initial doctor's visits to her PCP Dr. Richard Slater, and to Dr. Arons.  The Plaintiff also paid the required co-payments for the initial prescriptions as a result of those visits.  The Plaintiff was denied reimbursement by Town Fair Tires Worker's Compensation Carrier (Joan Sunter).  Town Fair Tire's Worker's Compensation Carrier disputed the Plaintiffs need to attend psychotherapy following her termination.  The Plaintiff paid the required co-payments and her private insurance paid the balance.

30. Plaintiff admits.

31.Plaintiff denies as stated.

Rather than risk an unfavorable outcome by the Workman's Compensation Commissioner, the Defendants voluntarily agreed to settle the Plaintiffs claim filed under CGS 31-290(a) for back wages only and further agreed to the stipulation that, "It is specifically agreed by and between the parties that this Stipulation is intended to release the employer from any claims the claimant has brought under Connecticut General Statute, Section 31-290 only.  This Stipulation in no way resolves the claimant's claim for

worker's compensation benefits under Chapter 568 or the claimant's on

going CHRO claim". Defendant's Discovery Document D00267 paragraph

3. On that occasion, counsel represented the Plaintiff, because she had

been instructed to retain an attorney for the proceedings at the previous

informal hearing by the Workman's Compensation Commissioner, Robin

Wilson. Defendant's Discovery Documents D00256, D00258, D00266,

D00267, D00268, D00269, D00270, D00271, D00318, D00319, D00320,

D00333, D00334, and D00335.

32. Plaintiff denies.

The Plaintiff is seeking relief in the form of compensatory and

punitive damages that she is entitled to seek under CGS 46(a)-104, ADA of

1990, as amended, 42 USC 12101, et seq,. Jurisdiction is specifically

conferred upon this court by 42 U.S.C. 2000e-5(f) equitable and other relief

is sought pursuant to 42 U.S.C. 2000e-5(g)Id., and Title VII of the Civil

Rights act of 1964 as amended, 42 U.S.C. 2000e, et seq. Plaintiff's CHRO

Complaint and Release of Jurisdiction.

TREATMENT OF MALE EMPLOYEES WITH PERMANENT MEDICAL
RESTRICTIONS

21

33. Plaintiff denies.

On July 23rd, 2001, the Defendants did not have a policy regarding light duty work. The Defendants own document, a copy of that policy is dated 7/25/01. Defendant's Discovery Document D00205. The affidavit of John Paxton, Jr. sufficiently establishes that as an employee on light duty at that time, he was not made aware of this "policy" until August 8th, 2001. Addidavit of John Paxton, Jr. #7 – 10.

34. Plaintiff denies

The Plaintiff cannot speculate nor offer testimony on the actions of the Defendants with regard to injured workers after her termination, which are not relevant to her claim. The Plaintiff is aware that prior to August 27th, 2001, there were three males who required light duty accommodations and received those accommodations without reduction in pay. Defendant's Discovery Documents D00472, D00473, 00474, D00475 and D00879. Of those three male employees, two were put on reduced hours by their treating physicians. The Plaintiffs work hours were not restricted by her treating physician but by the Defendants. Of those three male employees, two are

still currently employed. One was recently discharged for stealing. The one

store manager referred to by Kathryn Tutino in her affidavit is Richard

Murphy, who due to his permanent lifting restrictions was transferred out of

the retail store into a position at the corporate office that met those

permanent medical restrictions. Affidavit of Michael P. Balonze #8 a-g.

The Defendants own witness, Thomas Dowler stated an occasion

when the Defendant purchased a special chair so that a male employee on

medical restrictions could sit comfortably. Thomas Dowler Dep. at 35:20 –

39:16.

35. Plaintiff denies.

The Plaintiff contends that she was treated differently than similarly

situated male employees with respect to the Defendants temporary light duty

position, her reduced hourly rate of pay associated with that position, and

subsequently her termination.

Respectfully submitted,

Mickell Balonze, Pro Se
601 Longfellow Drive
Branford, CT 06405
(203)-488-1982

## CERTIFICATION

This is to certify that a copy of the foregoing has been hand delivered

on this the 21st day of June 2004, to:

> Jonathan B. Orleans
> Zeldes, Needles & Cooper,
> 1000 Lafayette Blvd., Suite 500
> Bridgeport, CT 06604

Mickell B. Balonze