UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICKELL B. BALONZE,                          :

     Plaintiff,                          :

        vs.                          : No. 3:02CV2247(WWE)

TOWN FAIR TIRE CENTERS, INC.,                :

     Defendant.                          :

----------------------------------X

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. # 52]

Plaintiff, Mickell Balonze, who is pro se,[1] has brought this employment discrimination action against her former employer, Town Fair Tire Centers, Inc. ("Town Fair Tire"),[2] alleging that she was discriminated against on the basis of her disability in violation of the Americans With Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), and on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

---

[1] Pursuant to Local Rule of Civil Procedure 56(b), defendant served plaintiff with the required "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," advising her of the nature and consequences of a summary judgment motion. See Vital v. Interfaith Med. Center, 168 F.3d 615, 620-21 (2d Cir. 1999). Plaintiff has responded to the motion for summary judgment with an opposition brief, a Local Rule 56(a)2 Statement, and supporting affidavits and deposition testimony, thus indicating she understood the significance of defendant's motion and what was required of her in opposing the motion. See Sawyer v. Am. Fed'n of Gov't Employees, 180 F.3d 31, 34-35 (2d Cir. 1999).

[2] All claims against the individual defendants have previously been dismissed by this Court.

1

("Title VII").   Although not expressly set forth in her
complaint, plaintiff also appears to be asserting a claim for
retaliatory discharge under Connecticut's Workers' Compensation
Act, Conn. Gen. Stat. § 31-290a.

Now pending before the Court is defendant's motion for
summary judgment addressed to all claims.  Defendant contends (1)
that plaintiff was not disabled within the meaning of the ADA;
(2) that even if she was disabled, Town Fair Tire fulfilled its
reasonable accommodation obligations; (3) that Town Fair Tire did
not treat plaintiff differently than similarly situated male
employees; and (4) that, to the extent plaintiff is asserting a
claim under the workers' compensation statutes, that claim is
subject to a settlement agreement or must be pursued before the
Workers' Compensation Commission rather than this Court.  For the
reasons set forth below, the Court will grant defendant's motion
for summary judgment.

## I.  Summary Judgment Standard

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter
of law,"  Fed. R. Civ. P. 56(c), that is, where the "record taken
as a whole could not lead a rational trier of fact to find for
the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,
263 F.3d 208, 212 (2d Cir. 2001) (quoting Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  An
issue is "genuine" if there is sufficient evidence such that a
reasonable jury could return a verdict for either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" if it may affect the outcome of the suit under
governing law.  Anderson, 477 U.S. at 248.

"It is now beyond cavil that summary judgment may be
appropriate even in the fact-intensive context of discrimination
cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466
(2d Cir. 2001).  The "salutary purposes of summary judgment -
avoiding protracted, expensive and harassing trials - apply no
less to discrimination cases than to ... other areas of
litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).
In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148
(2000), the Supreme Court "reiterated that trial courts should
not 'treat discrimination differently from other ultimate
questions of fact.'" (quoting St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 524 (1993)).

In ruling on a motion for summary judgment, the Court must
consider the record as a whole to determine whether there are any
genuine issues of material fact, resolving all ambiguities and
drawing all permissible factual inferences in favor of plaintiff,
the party against whom summary judgment is sought.  See McLee v.
Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## II.  Factual Background

### A.  Plaintiff's Employment and Medical History

In June 1997, Town Fair Tire hired plaintiff as a data entry clerk for accounts payable invoices, a position which required a substantial amount of computer work.  This was a part-time position, requiring plaintiff to work approximately 24 hours per week.  In October 1998, plaintiff was assigned the additional responsibility of entering information from advertising invoices.

On or about May 4, 1999, plaintiff began experiencing pain and swelling in her right index finger.  Plaintiff was diagnosed with acute tenosynovitis in the area of the A1 pulley of the right index finger, for which she was treated with medication and splinting.  She also received occupational therapy.  She was out of work from May 6 to May 18, 1999.  Plaintiff returned to work in a one-handed capacity from May 19 until July 7, 1999, when she was permitted to return to full-duty, two-handed work.  However, on July 29, she returned to one-handed duty until August 9, when she was again permitted to return to full duty.  Town Fair Tire accommodated all of these restrictions.

In September 1999, Town Fair Tire made significant changes to plaintiff's job duties in order to reduce the amount of data entry work required of her.  Plaintiff admits that no portion of the new job duties caused her any problems with her hand. However, in October 1999, recurring pain in her hand necessitated

4

surgery, followed by rehabilitative therapy.

In October 2000, plaintiff's treating physician concluded that she had reached "maximum medical improvement" and released her from further treatment, stating that she could continue "in her regular-duty work capacity." He assigned her a permanent partial disability rating of 17% to the right master index finger or 3% to the right master hand.

In February 2001, after another employee left the company, Town Fair Tire assigned plaintiff new, permanent job duties involving substantially less data entry work. With these new job duties, plaintiff received a pay raise. Plaintiff's former data entry job duties were then re-assigned to a new employee. Kathryn Tutino, Vice President and Controller of Town Fair Tire, testified that she believed the new job duties were within plaintiff's medical restrictions, and plaintiff never advised her otherwise. Plaintiff, on the other hand, states that she objected to the new assignment because she believed these duties required more repetitive keyboard work and, thus, exceeded her medical restrictions, but her objections were ignored.

In March 2001, plaintiff began experiencing increasing pain in her right hand, and in July 2001, plaintiff returned to her doctor with complaints of pain in her right hand that she believed was a "re-aggravation" of her prior injury caused by her work. Her doctor prescribed physical therapy three times a week.

In a July 23, 2001, note provided to Town Fair Tire, plaintiff's doctor stated that plaintiff should refrain from all keyboard duties and keypunching with her right hand.  Town Fair Tire accommodated these restrictions by assigning plaintiff to a temporary, light duty position that involved no keyboarding.  In this new position plaintiff worked from 10:00 a.m. to 2:00 p.m., Tuesday through Friday, and was responsible for opening and distributing the daily mail and covering for the receptionist during her breaks.  This revised position was at a reduced rate of pay, but plaintiff was advised that worker's compensation would make up a portion of the difference.

When plaintiff returned to work on July 31, she provided Town Fair Tire with an appointment card for physical therapy on July 30th, August 1st, and August 3rd at 12:30 p.m.  Each appointment typically required plaintiff to be away from the office for an hour and a half, and, thus, plaintiff would not be able to work during the receptionist's lunch break on these dates.  Tutino asked her to reschedule the appointments, but plaintiff refused to do so.  Tutino testified that there were no other light duties that did not involve keyboarding that could be assigned to plaintiff.  The following day, Tutino gave plaintiff a letter stating in relevant part:

> [Y]ou have advised us that you have scheduled physical
> therapy during these working hours and that the
> schedule cannot be changed.  For business reasons, this
> is not acceptable to us and we cannot further modify

the hours for the light duty position that meets your
scheduling needs.

We have notified our worker's compensation insurance
carrier that we have no light duty position and are
unable to offer you any light duty at this time.
Please contact me when your doctor authorizes you to
return to your normal duty.

(Balonze Dep. Ex. 16.)

In a "progress note" dated August 20, 2001, sent to Town
Fair Tire, plaintiff's doctor released plaintiff to perform "two-
handed modified duty, non-repetitive, with little or no keying."
Her doctor stated that these "should be permanent restrictions"
since plaintiff could "only tolerate repetitive keyboard work,
data entry and keypunching for a limited finite period of time
during an 8-hour shift."

On August 27, 2001, Town Fair Tire notified plaintiff by
letter that because keyboarding was an essential function of the
position she had held prior to the re-injury of her finger, and
because Town Fair Tire had no other positions available that did
not require use of a keyboard, plaintiff's employment was
terminated.

Plaintiff states that on August 24, 2001, a male employee,
Evan Shorkey, who held a position that required no computer work,
left his employment to attend college, but she was not offered
this position.  Tutino states that she did not believe plaintiff
could perform the essential functions of this job, which involved
carrying and heavy lifting, as well as some keyboarding.

Plaintiff also cites to Town Fair Tire's classified ads on July 29, 2001, and August 15, 2001, for positions requiring limited keying.[3]

Thereafter, plaintiff worked intermittently for Royal Doulton, Inc. as a sales associate/supervisor with the following duties: opening and closing the store via computer, entering daily sales figures into the computer, ringing customer sales, refunds, and exchanges into the computer, assisting customers with purchases, assembling displays, and restocking.  Plaintiff performed all requirements of this position without incident or complaint.

Plaintiff states in her affidavit that, outside of work, she could not perform the following activities: braiding hair, putting on and removing bracelets, lifting objects over 15 to 20 pounds, grocery shopping, opening bottles, jars or containers with airtight vacuum or safety seals, flossing her teeth, turning keys for deadbolt locks, and performing repetitive manual tasks.

## B.  Hostile Work Environment

Plaintiff claims that from May 1999 through July 2001, her work environment at Town Fair Tire was continuously hostile.  She was subjected to almost daily verbal harassment by her

---

[3]  The classified ads indicated that Town Fair Tire was looking for an "experienced part time office clerk.  Job duties include data entry, filing, copying, and other miscellaneous duties."

supervisor, Andrea DaCorte, who called her names like "gimpy" and "useless." Plaintiff also claims that she suffered "unwarranted humiliation" by Tutino, who treated plaintiff differently than other injured employees. Plaintiff overheard Tutino questioning plaintiff's immediate supervisor about why plaintiff was attending therapy during work hours.

At all times during plaintiff's employment, Town Fair Tire had a policy against discriminatory harassment and an equal employment opportunity policy, both of which were contained in the Employee Handbook. The policy stated that any employee who felt that he or she had been a victim of discrimination should report the offending conduct to the Director of Personnel. Plaintiff never complained of harassment to the Personnel Director, or to Tutino, or to the President of Town Fair Tire. Plaintiff, however, does state that on more than one occasion, she told her supervisor that her behavior was unwarranted and asked her to stop. Plaintiff also mentioned the hostility she was experiencing to Shauna Hindman, whose position in the company is not identified, and "may have expressed concern" to Michael Barbaro, Vice President of Operations. (Pl.'s Mem. at 7.)

### C. Disparate Treatment on Basis of Gender

Plaintiff also alleges that she was treated differently than similarly situated male employees with respect to her temporary light duty assignment, her reduced hourly rate of pay, and her

subsequent termination.  She offers the affidavit of John Paxton, Jr., who states that from September 2000 through January 2001, Town Fair Tire accommodated his restriction to modified duty due to a work-related injury.  In May 2002, after he sustained a second work-related injury requiring light duty restrictions, Town Fair Tire reduced his pay in accordance with a return-to-work program implemented on August 8, 2001.

Tutino states in her affidavit that, since 2001, several male Town Fair Tire employees, who had been injured and were authorized to return to work with medical restrictions, were offered light duty work with lesser responsibilities and at a lower rate of pay than their regular jobs with the difference in pay being covered by worker's compensation.  When the medical restrictions were lifted, they returned to their previous positions at full pay.  One male employee who was offered a light duty position consistent with his physical limitations failed to appear for work and was terminated.  Another male employee accepted a temporary light duty position at a reduced rate of pay for six months.  He then inquired about a permanent light duty position.  Because Town Fair Tire had no permanent position open for which he was qualified, his employment was terminated.

### D.  Plaintiff's Receipt of Worker's Compensation Benefits

Following plaintiff's development of problems with her finger in May 1999, she filed a claim for worker's compensation

benefits, which Town Fair Tire did not contest.    RSKCo., Town

Fair Tire's insurance carrier, allowed the claim and from May

1999 to August 2001, paid benefits to plaintiff, including wages

for missed work and medical expenses.  Most of plaintiff's

medical expenses, including the cost of her surgery, were covered

by worker's compensation, although plaintiff states that she paid

the necessary co-payments.  Town Fair Tire disputed plaintiff's

need for psychotherapy.  These visits were covered by plaintiff's

private medical insurance.  Additionally, plaintiff received

worker's compensation benefits for the wages she lost due to time

away from work in 1999 and 2001.

On August 14, 2002, plaintiff and defendant entered into a

settlement agreement as to her claims for retaliatory discharge

and discrimination pursuant to Conn. Gen. Stat. § 31-290a, which

provided that "[i]t is specifically agreed by and between the

parties that this Stipulation is intended to release the employer

from any claims the claimant has brought under Connecticut

General Statute, Section 31-290a[4] only.  This Stipulation in no

_____

[4]   Section 31-290a, Conn. Gen. Stat., provides in relevant
part:

        (a) No employer who is subject to the
        provisions of this chapter shall discharge,
        or cause to be discharged, or in any manner
        discriminate against any employee because the
        employee has filed a claim for workers'
        compensation benefits or otherwise exercised
        the rights afforded to him pursuant to the
        provisions of this chapter.

way resolves the claimant's claim for workers compensation
benefits under Chapter 568 or the claimant's ongoing CHRO claim."

### III.  Discussion

#### A.  Disability Discrimination Under the ADA

Plaintiff first claims that Town Fair Tire discriminated
against her on the basis of her disability, that being her
injured right hand, by harassing her, by failing to accommodate
her disability, and ultimately by discharging her, in violation
of the ADA.

A plaintiff suing for disability discrimination under the
ADA bears the initial burden of establishing a prima facie case
of discrimination.  Regional Econ. Cmty. Action Program, Inc. v.
City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002).  In order to
survive a motion for summary judgment, plaintiff must establish a
prima facie case by producing sufficient evidence to support an
inference of discrimination.[5]  Wernick v. Federal Reserve Bank of
New York, 91 F.3d 379, 383 (2d Cir. 1996).  Where, as in this

---

[5] Once the plaintiff establishes a prima facie case, the
burden of production then shifts to the defendant, who must
articulate a legitimate, nondiscriminatory reason for its
challenged actions.  If the defendant carries this burden, the
presumption of discrimination created by the plaintiff's prima
facie showing drops out of the case, and the plaintiff must then
prove that the defendant's actions were motivated by
impermissible discrimination.  See Regional Econ. Cmty. Action
Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir.
2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973)).  In this case, because the Court finds that plaintiff
has not met her prima facie burden, the Court need not address
the remaining issues.

case, a plaintiff claims that the employer failed to reasonably accommodate her disability, the prima facie burden requires a showing that: (1) she is a person with a disability, within the meaning of the ADA; (2) an employer, covered by the ADA, had notice of the disability; (3) with reasonable accommodation, she could perform the essential functions of the job; and (4) the employer refused to make such accommodations. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); see also Heilweil v. Mt. Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994), cert. denied, 513 U.S. 1147 (1995)(decided under the Rehabilitation Act).  In this case, the Court finds that plaintiff has not carried her prima facie burden of proving that she was disabled under the ADA.

The first hurdle plaintiff must clear is to show that she had a "disability" within the meaning of the ADA.  Under the ADA, a disability is defined as

>    (A) a physical or mental impairment that
>    substantially limits one or more of the
>    major life activities of such individual;
>    (B) a record of such an impairment; or
>    (C) being regarded as having such an
>    impairment.

42 U.S.C. § 12102(2).  There is no question in this case that plaintiff had a physical impairment, and defendant so concedes. See 45 C.F.R. § 84.3(j)(2)(i) (defining a physical impairment as including "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the

following body systems: neurological; musculoskeletal . . ."); see generally Toyota Motor Mftg., Ky., Inc. v. Williams, 534 U.S. 184, 194-95 (2002).  However, "[m]erely having an impairment does not make one disabled for purposes of the ADA."  Toyota Motor Mftg., 534 U.S. at 195.  A plaintiff must also demonstrate that the impairment substantially limits a major life activity.  See 42 U.S.C. § 12102(2)(A).  The phrase "major life activities" is defined by the regulations as including functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  Additionally, to qualify as "disabled," a plaintiff must show that the limitation on the major life activity is "substantial."  42 U.S.C. § 12102(2)(A).

In this case, plaintiff does not contend that she was substantially limited in the major life activity of working, which would require that she show that she was substantially limited in her ability to perform a broad range of jobs.  29 C.F.R. § 1603.2(j)(3)(i); Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 154 (2d Cir. 1998).  Instead, the issue here is whether plaintiff's impairment substantially limited her in the major life activity of performing manual tasks.

The Supreme Court recently considered this same issue in the case of an assembly line worker who suffered from carpal tunnel

syndrome and related impairments.  <u>Toyota Motor Mftg.</u>, 534 U.S. 184.  The Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long-term."  534 U.S. at 198.[6]

In the case of <u>Munck v. New Haven Savings Bank</u>, 251 F. Supp. 2d 1078 (D. Conn. 2003), this Court considered the issue of whether a bank teller who had difficulty performing repetitive motions on the right side of her body and who had lifting restrictions was limited in the major life activity of performing manual tasks.  In that case, the plaintiff testified that her injuries "had a profound effect on her lifestyle" and

---

[6]  In <u>Toyota Motor Mftg.</u>, the Supreme Court found that the manual task on which the Court of Appeals had relied, <u>i.e.</u>, repetitive work with hands and arms extended at or above shoulder levels for extended periods of time, was not an important part of most people's daily lives.  534 U.S. at 186.  Instead, the Court focused on whether the claimant could tend to her own personal hygiene or carry out personal or household chores.  534 U.S. at 186.  The record indicated that her medical condition caused her to avoid sweeping, to quit dancing, to occasionally seek help in dressing, to reduce how often she played with her children, gardened, and drove long distances.  534 U.S. at 202.  She could, however, brush her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up around the house.  534 U.S. at 202.  The Supreme Court held that these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they established a manual task disability as a matter of law.  534 U.S. at 202.

"substantially limited major life activities such as sports and household chores.  The entire right hand side of her body was affected." Munck, 251 F. Supp. 2d at 1083.  She admitted, however, that she was able to attend to her own personal hygiene, including bathing, was able to perform household chores, was able to babysit for young children, and could shop and cook for her family.  Munck, 251 F. Supp. 2d at 1083.  Noting that the plaintiff was able to perform all necessary household chores, although perhaps not as easily as she once could, the Court held as a matter of law that the limitations that plaintiff faced did not fit the definition of disability under the ADA, citing Toyota Motor Mftg., 534 U.S. at 202.  Munck, 251 F. Supp. 2d at 1083.

In Colwell v. Suffolk County Police Department, 158 F.3d 635, 641 (2d Cir. 1998), the Second Circuit emphasized that a plaintiff claiming an impairment that affected a major life activity would be ineligible under the ADA unless the limitation on the major life activity was substantial.  The Court noted that an ADA analysis should focus on whether an activity is a significant activity under the ADA, and not merely an activity that is important to a particular plaintiff.  158 F.3d at 642. As the Supreme Court noted, "the manual tasks unique to any particular job are not necessarily important parts of most people's lives." Toyota Motor Mftg., 534 U.S. at 201.  Being unable to do job-related tasks is insufficient proof of a

16

disability.  534 U.S. at 201.

It is plaintiff's burden on summary judgment to come forward with evidence that indicates that she could meet her ultimate burden of showing an ADA recognized disability.  Here, the Court finds that plaintiff has failed to meet that burden.  In her deposition, plaintiff described the limitations to her daily life caused by her finger condition.  She testified that she had difficulty braiding her hair and her daughter's hair, although she was able to fix her own hair after she recovered from her surgery in 1999 (Pl.'s Dep. at 43); that although she had trouble opening jars, she was usually able to open them with her left hand (Pl.'s Dep. at 44); that she had trouble folding clothes a few times (Pl.'s Dep. at 44); that she still has trouble lifting laundry and groceries (Pl.'s Dep. at 44-45); and that she limits her grocery shopping because of this (Pl.'s Dep. at 45-46).  She testified that there are no other ways in which her finger condition has affected her life.  (Pl.'s Dep. at 46 & 146-48.) These limitations are not so substantial as to severely restrict plaintiff from doing the activities that are of central importance to most people's daily lives.

As the Supreme Court has cautioned, the term "disabled" in the ADA must be interpreted strictly to create a "demanding standard" for qualifying as disabled.  Toyota Motor Mftg., 534 U.S. at 197; see also Thornton v. McClatchy Newspapers, Inc., 292

F.3d 1045 (9th Cir. 2002)(holding that a plaintiff who could not
engage in continuous keyboarding or handwriting was not
"disabled" within the meaning of the ADA because she was not
substantially limited in performing manual tasks); Fultz v. City
of Salem, 51 Fed. Appx. 624, 2002 WL 31051577 (9th Cir. 2002)
(holding that a police officer who suffered an injury to his ring
finger was not "disabled" where his ability to perform certain
manual tasks was diminished but not "substantially limited");
Loberg v. Gordon Flesch Co., 308 F. Supp. 2d 890 (N.D. Ill. 2004)
(holding that an employee's work-related injury to his finger did
not constitute a disability under the ADA because his condition
did not prevent him from performing a variety of tasks central to
most people's daily lives); Lajeunesse v. Great Atlantic &
Pacific Tea Co., 160 F. Supp. 2d 324 (D. Conn. 2001) (holding
that a plaintiff with a rotator cuff injury that restricted his
ability to lift was not "disabled" because his condition did not
substantially limit his ability to sit, stand, lift, reach or
sleep, nor significantly restrict his employment generally);
Cutler v. Hamden Bd. of Educ., 150 F. Supp. 2d 356 (D. Conn.
2001) (holding that an employee with carpal tunnel syndrome was
not disabled because his condition did not substantially limit a
major life activity).

    To the extent that plaintiff relies on the second prong of
the definition of "disabled," that is, "having a record of such

an impairment," 42 U.S.C. § 12102(2)(B), her argument fails for the same reason.  Plaintiff must produce evidence of a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the major life activities.  See Loberg, 308 F. Supp. 2d at 892.  This she has failed to do.

As to the third option for establishing a disability within the meaning of the ADA, "being regarded as having such an impairment," 42 U.S.C. § 12102(2)(C), the record does not reflect that defendant regarded plaintiff as substantially limited in her ability to work or in any other major life activity.  See Munck, 251 F. Supp. 2d at 1083; Beason v. United Tech. Corp., 213 F. Supp. 2d 103, 107 (D. Conn. 2002).

Accordingly, having found that plaintiff has not carried her prima facie burden of showing that she was "disabled" within the meaning of the ADA, the Court grants summary judgment in favor of defendant on plaintiff's claims under the ADA.

## B.  Disability-Based Hostile Work Environment

Plaintiff also asserts that defendant Town Fair Tire discriminated against her by subjecting her to a hostile work environment based upon her disability.  Although the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environments, see Bonura v. Sears Roebuck & Co., 62 Fed. Appx. 399, 400 n. 3, 2003 WL 21024620, *1 n. 3 (2d Cir. 2003), several other circuit courts and several

district courts in this circuit have held that such claims are cognizable.  See, e.g., Fox v. General Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001); Flowers v. Southern Reg'l Physician Servs., Inc., 247 F.3d 229, 232-35 (5th Cir. 2001); De La Cruz v. Guilliani, No. 00-7102, 2002 U.S. Dist. LEXIS 19922, at *28 (S.D.N.Y. Aug. 23, 2002) (analyzing ADA hostile work environment claims under the same standard utilized in Title VII cases); Hendler v. Intelecom USA, Inc., 963 F. Supp. 200, 208 (E.D.N.Y. 1997) (same);  Hudson v. Loretex Corp., No. 95-844, 1997 WL 159282, at *2-3 (N.D.N.Y. Apr. 2, 1997) (same).  Because this Court finds that plaintiff cannot establish a hostile work environment under the standards utilized in Title VII cases, this Court does not reach the issue of whether the ADA supports such a cause of action.

A work environment is hostile "'when the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  Torres v. Pisano, 116 F.3d 625, 630-31 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  When analyzing a hostile work environment claim, courts should consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 767-68 (2d Cir. 1998). Generally, isolated incidents of harassment do not give rise to a hostile work environment claim; instead, the incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation marks omitted).

Here, the conduct alleged by plaintiff was not so severe or pervasive as to have altered her working conditions. <u>See</u> <u>Oncale v. Sundowner Offshore Services</u>, 523 U.S. 75, 80-81 (1998) (noting the Supreme Court's desire to set the standards for a viable hostile work environment claim sufficiently high to prevent converting Title VII into a "general civility code" for the workplace). Although plaintiff has produced evidence of offensive name-calling by her supervisor, these incidents are not sufficient to meet the standard for an actionable claim of hostile work environment based upon her disability. The conduct described is not "so severe or egregious" as to alter the terms and conditions of plaintiff's employment. Indeed, courts have granted summary judgment to employers in harassment cases where the plaintiff's evidence of harassment was much more severe than that alleged in this case. <u>See</u>, <u>e.g.</u>, <u>Henry v. Guest Servs., Inc.</u>, 902 F. Supp. 245 (D.D.C. 1995), <u>aff'd</u>, 98 F.3d 646 (D.C. Cir. 1996); <u>Rodriguez v. Loctite Puerto Rico, Inc.</u>, 967 F. Supp.

653, 665-66 (D.P.R. 1997).  Accordingly, the Court grants summary
judgment in favor of defendant on plaintiff's hostile work
environment claim under the ADA.

### C.  Gender Discrimination in Violation of Title VII

Plaintiff also alleges that she was discriminated against on
the basis of her gender, in violation of Title VII of the Civil
Rights Act of 1964, as amended.  42 U.S.C. § 2000e.  She claims
that Town Fair Tire "had male employees who were working under
medical restrictions yet those male employees did not have to
suffer the humiliation and anxiety of work reduction, pay
reduction, or termination."  (Attachment to Pl.'s Compl.,
Question 6, No. 11.)  Her claim is one of disparate treatment,
that is that similarly situated male employees, who were
medically restricted from performing all of their usual job
duties, were treated more favorably than she was treated.

Plaintiff, however, has failed to produce sufficient
evidence in support this claim to create a triable issue of fact.
Ms. Tutino states in her affidavit that Town Fair Tire treats
male employees with medical restrictions in the same manner as
female employees.  If a male employee can perform the essential
functions of his position, he remains in that position and the
non-essential functions of the position may be reallocated, just
as was done for plaintiff from the time of her surgery until July
2001.  If a male employee cannot perform all of the essential

22

functions of his job, Town Fair Tire will offer him light duty
work, if it is available.  If the new position carries a lower
pay rate, he will receive the lower salary and Worker's
Compensation will make up part of the difference.  Again, this
was how plaintiff was treated.  If a male employee is permanently
unable to perform an essential function of his position, he will
be reassigned to a new position consistent with his capabilities,
if such a position is available.  If it is not, he will be
discharged.  Again, this is how plaintiff was treated.

The only evidence that plaintiff has proffered to refute
this testimony of Ms. Tutino is the affidavit of John Paxton, who
states that on one occasion, after an injury, he was assigned
light duty work without any reduction in hours or pay, and on
another, he was assigned light duty but his pay was reduced.
This is not inconsistent with Town Fair Tire's policy of offering
light duty work to employees if it is available, and compensating
such employees according to the position.

Plaintiff has failed to set forth a prima facie case of
discrimination based upon her gender and, therefore, the Court
grants summary judgment in favor of defendant on this claim.

### D.  Worker's Compensation Retaliation

As noted above, although plaintiff's complaint does not set
forth a claim for retaliation under the state Worker's
Compensation Act, Conn. Gen. Stat. § 31-290a, she now appears to

be asserting such a claim and seeks damages for the injury to her hand, including pain and suffering, economic losses, and impairment of earning capacity.

To the extent that plaintiff seeks damages for injury to her hand, these are barred by the exclusivity provisions of the Worker's Compensation Act, Conn. Gen. Stat. § 31-284(a).  See Mingachos v. CBS, Inc., 196 Conn. 91 (1985).

To the extent that plaintiff claims that Town Fair Tire retaliated against her for filing a claim for workers' compensation benefits, plaintiff, represented by counsel, released this retaliation claim in a Stipulation of Settlement with Town Fair Tire, dated August 7, 2002, and approved by the Worker's Compensation Commissioner on August 14, 2002.[7]

Accordingly, any claim for retaliation under the Worker's Compensation Act must be dismissed.

## III.  Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment **[Doc. # 52]** is GRANTED as to all counts of Plaintiff's Complaint.

SO ORDERED, this   31st   day of     March     , 2005, at Bridgeport, Connecticut.

                          /s/ Warren W. Eginton
                         Warren W. Eginton,
                         Senior United States District Judge

---

[7]  See Discussion at 11, supra.

24